Xhavin Sinha (SBN # 309340)
SINHA LAW
3901 Lick Mill Blvd., Suite 356
Santa Clara, CA 95054
Telephone: (408) 791-0432
Email: xsinha@sinha-law.com

Attorneys for Plaintiff
PACIFIC ENVIRONMENTAL ADVOCATES

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC ENVIRONMENTAL ADVOCATES, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>RECONSERVE OF CALIFORNIA - STOCKTON, INC., and DOES 1-10, inclusive,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, CIVIL PENALTIES AND REMEDIATION**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§1251 et seq.)** |

Plaintiff PACIFIC ENVIRONMENTAL ADVOCATES, LLC ("PEA") hereby brings this civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*.

## INTRODUCTION

1.     This action is a citizen suit for injunctive relief, declaratory relief, civil penalties, and remediation against Defendant ReConserve of California – Stockton, Inc., ("ReConserve" or "ReConserve of California") for current and ongoing violations of the National Pollutant Discharge Elimination System ("NPDES") permit requirements of the CWA.

COMPLAINT – Page 1

2.      On or about March 8, 2024, PEA provided a Notice of Defendant's violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board") and (4) to Defendant, including a copy delivered to the facility Manager of Defendant ReConserve of California, by certified mail, at 704 Zephyr Street, Stockton, California ("the facility"), as required by the CWA. 33 U.S.C. § 1365(b)(1)(A).

3.      On or about March 25, 2024, PEA provided a First Amended Notice of Defendant's violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board") and (4) to Defendant, including a copy delivered to the facility Manager of Defendant ReConserve of California, by certified mail, at 704 Zephyr Street, Stockton, California ("the facility"), and electronic mail to the Facility.

4.      A copy of PEA's First Amended Notice of Intent to Sue ("Notice") is attached hereto as **Exhibit A** and is incorporated herein by reference.

5.      More than sixty days have passed since PEA's Notice was properly and lawfully served on Defendant, the State Board, and the Regional and National EPA Administrators.  PEA is informed and believes, and thereupon alleges, that neither the National EPA, nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1331 (federal question), and 33 U.S.C. section 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. sections 2201-2202 (declaratory relief), 33 U.S.C. sections 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. sections 1319(d), 1365(a) (civil penalties).

7.      The Permit under which this case arises is a Federally required permit based upon California state substantive law.  (*Southern California Alliance of Publicly Owned Treatment Works v. U.S. Environmental Protection Agency* (9th Cir. 2017), 853 F.3d 1076; *Dept. of Finance v. Commission on State Mandates,* 1 Cal.5th 749 (2016))

8.      By its express language, a violation of the State permit constitutes a per se violation of the Federal Clean Water Act.  (California's Industrial General Permit Order 2014-0057 DWQ, NPDES Order No. CAS000001, Section XXI.A)

9.      Venue is proper because Defendant resides in and the events or omissions giving rise to PEA's claims occurred in this District. 28 U.S.C. §1391(b)(1), (2). Venue is also proper because the facility's CWA violations have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

**PARTIES**

10.      Plaintiff PACIFIC ENVIRONMENTAL ADVOCATES, LLC ("PEA") is an environmental membership group organized under the laws of the State of California.

11.      PEA's organizational purpose is the protection, preservation and enhancement of the rivers, creeks, streams, lakes and oceans (and their tributaries) located in California.

12.     PEA's organizational purpose and mission is accomplished through enforcement of the provisions of the Federal Clean Water Act and California's Industrial General Permit, in seeking redress against Industrial Dischargers who violate the Clean Water Act by failing to comply with all standard conditions of the Industrial General Permit.  These standard conditions include, but are not limited to, discharges of polluted stormwater in violation of Federal and California criteria, deficient Stormwater Pollution Prevention Plans and Site Maps, deficient stormwater monitoring and sampling programs/protocols and reporting, deficient best management practices, deficient or non-existing exceedance response action reports, deficient or non-existing employee stormwater training programs, deficient or non-existing annual reports and other informational deficiencies.

13.     PEA's associational members volunteer their resources to join PEA's organizational purpose and mission.

14.     PEA has associational members throughout Northern California.  Some of PEA's members reside, work and/or recreate near the San Joaquin River, a tributary of the Sacramento-San Joaquin River Delta Waterways (the "Receiving Waters" for Defendant's storm water run-off), and use those waters and their watersheds for kayaking, canoeing, camping, cycling, recreation, sports, fishing, swimming, hiking, bird watching, photography, nature walks and scientific study.  Their use and enjoyment of these natural resources have been and continue to be adversely impaired by Defendant's failure to comply with the procedural and substantive requirements of the California Industrial General Permit and Federal Clean Water Act.

15.     PEA has Article III standing as an association to bring this suit against Defendant, as at least one of PEA's current members is experiencing an ongoing, concrete and particularized injury fairly traceable to Defendant's violations of the Clean Water Act and Industrial General

Permit, which likely can be redressed by a judicial decision granting PEA the injunctive relief requested herein.

16.     Specifically, the aesthetic and recreational interests of the individual associational members of PEA with Article III standing have been adversely impacted by Defendant's failure to comply with the procedural and substantive requirements of the California Industrial General Permit and Federal Clean Water Act, as delineated herein.

17.     In addition to harming the aesthetic and recreational interests of PEA's members with standing in this matter, Defendant's procedural violations of the standard conditions of California's Industrial General Permit have caused informational injuries to PEA's standing members by depriving these members of their substantive constitutional and statutory rights to obtain information regarding Defendant's compliance with standard conditions of California's Industrial General Permit as delineated herein, which provisions have been instituted by relevant regulatory agencies for the purposes of protecting the Waters of the United States.

18.     PEA's associational members who qualify for standing in this matter are current members who have been members of PEA since at least the date that PEA provided to Defendant the 60-day Notice of Intent to Sue attached hereto as **Exhibit A.**

19.     Defendant's ongoing violations of the General Permit and the Clean Water Act have and will continue to cause irreparable harm to PEA and its current standing members.

20.     The relief requested herein will redress the ongoing injury in fact to PEA and its members.

21.     Neither litigation of the claims asserted, nor the relief requested in this Complaint, will require the participation in this lawsuit of any individual members of PEA.

22.     PEA is informed and believes, and on such information and belief alleges, that Defendant ReConserve of California – Stockton, Inc., , located at 704 Zephyr Street, in Stockton, California, is a California corporation in good standing with the California Secretary of State.

23.     PEA is informed and believes, and on such information and belief alleges, that Defendant ReConserve of California -Stockton, Inc., is identified in the Regional Water Board's records as the Industrial General Permit applicant and operator of the facility.

## STATUTORY BACKGROUND

24.     Congress declared that the Federal Clean Water Act was designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through federal and state cooperation to develop and implement "programs for preventing, reducing, or eliminating the pollution of navigable waters and ground waters." 33 U.S.C. §§ 1251(a), 1252(a).

25.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

26.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. 33 U.S.C. § 1342(p). States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(p).

27.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Water Resources Control Board ("Water Board") to issue NPDES permits, including general NPDES permits in California.

General Permit

28.     The State Board elected to issue a statewide general permit for industrial storm water discharges. The State Board originally issued the General Permit on November 19, 1991, and modified it on September 17, 1992.   The State Board reissued the General Permit on April 17, 1997, and again on April 1, 2014 (the "2015 Permit" or "General Permit"), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p). The 1997 Permit was in effect between 1997 and June 30, 2015.  The 2015 Permit went into effect on July 1, 2015.  The 2015 Permit maintains or makes more stringent the same requirements as the 1997 Permit.

29.     On November 16, 2018, the State Water Board adopted a revised General Permit (Order No. 2018-0028-DWQ, which technically became effective on July 1, 2020.  However, the 2018 Revisions have not officially been finalized or certified by the Clerk of the State Water Board as of the date of this Complaint.

30.     In order to discharge storm water lawfully in California, all industrial facilities discharging, or having the potential to discharge, storm water associated with industrial activity ("Dischargers") which have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent to Comply ("NOI").  Dischargers have been required to file NOIs since March 30, 1992.

31.     The specific industrial facilities required to apply for General Permit coverage are identified on Attachment A to the General Permit.

32.     The General Permit contains several prohibitions. Effluent Limitation V(A) of the General Permit requires Dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  Discharge Prohibition III(C) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

33.     Receiving Water Limitation VI(B) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment. Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the Permit prohibit storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

34.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that Dischargers must meet.

35.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP"). The SWPPP must describe storm water control facilities and measures that comply with the BAT and BCT standards.  The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges and authorized non-stormwater discharges from the facility, and to implement best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-storm water discharges. General

Permit, § X(C). These BMPs must achieve compliance with the General Permit's effluent limitations and receiving water limitations, including the BAT and BCT technology mandates.

36.     To ensure compliance with the General Permit, the SWPPP must be evaluated and revised, as necessary. General Permit, § X(B).

37.     Failure to develop or implement an adequate SWPPP, or to update or revise an existing SWPPP as required, is a violation of the General Permit. General Permit, Fact Sheet §I(1).

38.     Sections X(D) – X(I) of General Permit set forth the requirements for a SWPPP. Among other requirements, the SWPPP must include: a pollution prevention team; a site map; a list of significant materials handled and stored at the site; a description of potential pollutant sources; an assessment of potential pollutant sources; and a description of a specific mandatory set of minimum BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-stormwater discharges.

39.     The General Permit further requires dischargers to implement and maintain, to the extent feasible, any one or more of the following advanced BMPs necessary to reduce or prevent discharges of pollutants in industrial storm water discharges: exposure minimization BMPs, storm water containment and discharge reduction BMPs, treatment control BMPs, and other advanced BMPs. General Permit, § X(H)(2). Failure to implement advanced BMPs as necessary to achieve compliance with either technology or water quality standards is a violation of the General Permit.

40.     The General Permit also requires that the SWPPP include BMP Descriptions and a BMP Summary Table. General Permit, § X(H)(4), (5).

41.     The General Permit requires Dischargers to develop and implement an adequate written Monitoring and Reporting Program. The primary objective of the Monitoring and Reporting Program is to detect and measure the concentrations of pollutants in a facility's

discharge to ensure compliance with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.

42.     As part of their monitoring program, Dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.

43.     Section XI(B) of the General Permit requires that Dischargers collect and analyze storm water samples from two qualifying storm events ("QSEs") during the first half of each reporting year (July 1 to December 31) and two QSEs during the second half of each reporting year (January 1 to June 30), and that the samples be collected from all outfalls identified in the facility SWPPP.

44.     A QSE is a precipitation event that produces a discharge for at least one drainage area and is preceded by 48 hours with no discharge from any drainage area.  General Permit §XI(B)(2)

45.     Once the storm water samples have been collected, the General Permit requires that the Discharger deliver the samples to a qualified laboratory for analysis within 48 hours of collection (General Permit, Attachment H) and upload into SMARTS the resulting laboratory reports within 30 days from receipt of the report.  General Permit § XI(B)(4)

46.     Facilities are also required to make monthly visual observations of storm water discharges. The visual observations must represent the quality and quantity of the facility's storm water discharges from the storm event.  General Permit, § XI(A)

47.     The General Permit requires operators to conduct an Annual Comprehensive facility Compliance Evaluation ("Annual Evaluation") that evaluates the effectiveness of current

BMPs and the need for additional BMPs based on visual observations and sampling and analysis results. General Permit, § XV.

48.     Under the General Permit, facilities must analyze storm water samples for pH, oil & grease and total suspended solids, as well as additional parameters indicated in the Permit by facility type and those parameters identified by the Discharger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment.  General Permit, § XI(B)(6)(c).

49.     The US EPA has established Parameter Benchmark Values as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. These benchmarks represent pollutant concentrations at which a storm water discharge could potentially impair, or contribute to impairing, water quality, or affect human health from ingestion of water or fish.

50.     The Numeric Action Levels ("NALs") in the General Permit are derived from these benchmarks. The Permit incorporates annual NALs, which are derived from the 2008 MSGP benchmark values, and instantaneous maximum NALs, which are derived from a Water Board dataset.

51.     The following annual NALs have been established under the General Permit for pollution parameters applicable to all Dischargers: pH – 6.0 - 9.0 standard units ("S.U."); total suspended solids ("TSS") – 100 mg/L; oil & grease ("O&G") – 15 mg/L; iron – 1.0 mg/L, nitrite + nitrate as nitrogen --.68 mg/L, zinc --.26 mg/L, phosphorus --2.0 mg/L, aluminum – .75 mg/L, lead – .262 mg/L, copper – .0332 mg/L, nickel – 1.02 mg/L and chemical oxygen demand – 120 mg/L.

52.     An exceedance of an annual NAL occurs when the average of all samples obtained for an entire facility during a single reporting year is greater than a particular annual NAL. The reporting year runs from July 1 to June 30.  An instantaneous maximum NAL exceedance occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value (for TSS and O&G) or are outside of the instantaneous maximum NAL range for pH.  General Permit §XII(A)

53.     When a Discharger exceeds an applicable NAL, it is elevated to "Level 1 Status," which requires a revision of the SWPPP and additional BMPs. If a discharger exceeds an applicable NAL during Level 1 Status, it is then elevated to "Level 2 Status."  General Permit § XII(C)

54.     For Level 2 Status, a Discharger is required to submit an Action Plan requiring a demonstration of either additional BMPs to prevent exceedances, a determination that the exceedance is solely due to non-industrial pollutant sources, or a determination that the exceedance is solely due to the presence of the pollutant in the natural background.  General Permit §XII(D)

55.     The Water Board has established an online database referred to as its Stormwater Multiple Application and Tracking System (SMARTS").  SMARTS is a platform where Dischargers, regulators, and the public can enter, manage, and view storm water data associated with General Permit compliance.

56.     The General Permit requires Dischargers to upload to SMARTS all Permit Registration Documents, including SWPPPs and Site Maps, monitoring and sampling data and Annual Reports.

57.     Section XVI(A) of the General Permit requires that all Dischargers must certify and submit to SMARTS an Annual Report no later than July 15th following each reporting year using the standardized format and checklists in SMARTS.

58.     Furthermore, Section XXI(L) of the General Permit provides that all documents submitted to SMARTS, including SWPPPs and Annual Reports, be certified by a legally responsible party or duly authorized representative of the facility, with the following certification:

"I certify under penalty of law that this document and all Attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system or those persons directly responsible for gathering the information, to the best of my knowledge and belief, the information submitted is, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

59.     Section XXI(N) of the General Permit provides that any person who knowingly makes any false material statement, representation, or certification in any record or other document submitted or required to be maintained under the General Permit, including reports of compliance or noncompliance shall upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both.  *See also* Clean Water Act section 309(c)(4)

Central Valley Region Basin Plan

60.     The Regional Board has identified beneficial uses of the Central Valley Region's waters and established water quality standards for the Sacramento River and its tributaries and the Sacramento-San Joaquin Delta in "The Water Quality Control Plan (Basin Plan) for the California Regional Water Quality Control Board, Central Valley Region – *The Sacramento River Basin and The San Joaquin River Basin*," generally referred to as the Basin Plan, and the "Water Quality Control Plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary."

61.     The beneficial uses of these waters include, among others, domestic and municipal supply, water contact recreation, non-contact water recreation, wildlife habitat, warm and cold freshwater habitat, and fish spawning. The non-contact water recreation use is defined as "uses of water for recreational activities involving proximity to water, but where there is generally no body contact with water, nor any likelihood of ingestion of water. These uses include, but are not limited to, picnicking, sunbathing, hiking, camping, boating. . . hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities."

62.     The Basin Plan includes a narrative toxicity standard which states that all waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life.

63.     The Basin Plan provides that water shall not contain floating material in amounts that cause nuisance or adversely affect beneficial uses.

64.     The Basin Plan provides that water shall be free of discoloration that causes nuisance or adversely affects beneficial uses.

65.     The Basin Plan provides that waters shall not contain suspended materials in concentrations that cause nuisance or adversely affect beneficial uses.

66.     The Basin Plan also prohibits the discharges of oil and grease, stating that waters shall not contain oils, greases, waxes, or other materials in concentrations that cause nuisance, result in a visible film or coating on the surface of the water or on objects in the water, or otherwise adversely affect beneficial uses.

67.     The Basin Plan provides that at a minimum, water designated for use as domestic or municipal supply (MUN) shall not contain concentrations of chemical constituents in excess of the maximum contaminant levels (MCLs) specified in the following provisions of Title 22 of the

California Code of Regulations, which are incorporated by reference into this plan: Tables 64431-A (Inorganic Chemicals) and 64431-B (Fluoride) of Section 64431, Table 64444-A (Organic Chemicals) of Section 64444, and Tables 64449-A (Secondary Maximum Contaminant Levels-Consumer Acceptance Limits) and 64449-B (Secondary Maximum Contaminant Levels-Ranges) of Section 64449.

68.     Title 22 of the California Code of Regulations provides a MCL for aluminum of 1.0 mg/L, for Cadmium of .01 mg/L, and lead of .05 mg/L.

69.     The Basin Plan provides that the pH shall not be depressed below 6.5 nor raised above 8.5; that iron levels not exceed .30 mg/L; that zinc not exceed .10 mg/L; that copper not exceed .0056 mg/L, and that cadmium not exceed .00022 mg/L.

70.     The Basin Plan requires that waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses."

71.     Table III-1 of the Basin Plan provides a water quality objective ("WQO") for iron of 0.3 mg/L.

Citizen Suit Provision of the CWA

72.     Under the CWA, any citizen may commence a civil action against any person who is alleged to be in violation of an effluent standard or limitation under the CWA or an Order issued by a State with respect to such a standard or limitation." 33 U.S.C. §1365(a)(1). No action may be commenced prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator of the EPA, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(A).  By including a citizen suit provision in the CWA, Congress ensured that the purposes and requirements of the CWA would be enforced, either by the United States government or by concerned citizens.

73.     In furtherance of the water preservation goals established by the CWA, the citizen suit provision confirms the district court's jurisdiction to apply any appropriate civil penalties under section 1319(d). 33 U.S.C. § 1365(a). Section 1319(d) declares that any person who violates any permit condition or limitation implementing any of such sections in an NPDES permit shall be subject to a civil penalty not to exceed $46,192.00 per day for each violation occurring before November 2, 2015, and $56,460.00 per day per violation for violations occurring after November 2, 2015.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; General Permit XXI.Q.1.

74.     Violations of provisions of the General Permit, including those detailed below, constitute violations of the CWA and are subject to civil penalties. General Permit § XXI; 33 U.S.C. §§ 1319(d), 1342; 40 C.F.R. §§ 19.1-19.4.

## FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS

75.     Defendant ReConserve of California is a facility that recycles food by-products for livestock feed.  PEA is informed and believes that the facility falls under standard industrial classification ("SIC") code 2048.

76.     PEA is informed and believes that Defendant ReConserve of California stores industrial materials outdoors that can be exposed to storm water, eroded by wind, and otherwise contaminate the surrounding watershed.

77.     Plaintiff is informed and believes, and thereupon alleges that during rain events, storm water flows over the surface of the facility where industrial activities occur and areas where airborne materials associated with the industrial processes at the facility may settle onto the ground.   Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these areas collects suspended sediment, dirt, metals, and other pollutants as it flows towards the facility's storm water channels.

78.     Based on PEA's investigation, including a review of the Defendant's Notice of Intent to Comply with the Terms of the Industrial General Permit ("NOI"), SWPPP, aerial photography, Federal, State and local regulatory agency mapping tools and PEA's information and belief, storm water leaves the boundaries of Defendant's facility and enters Duck Creek before reaching San Joaquin River, a navigable Water of the United States.

79.     Plaintiff is informed and believes, and thereupon alleges, that the best management practices at the facility are currently inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.

<u>Deficient SWPPP/Failure to Follow SWPPP</u>

80.     On information and belief, Plaintiff alleges that since at least 3/10/2019, Defendant has failed to implement an adequate SWPPP for its facility.

81.     Plaintiff is informed and believes, and thereupon alleges, that Defendant's SWPPP and Site Map do not include each of the mandatory elements required by Section X of the General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

82.     Plaintiff is informed and believes, and thereupon alleges, that Defendant's SWPPP and Site Map do not include sufficient information to comply with the mandatory elements required by Section X of the General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

83.     According to information available to PEA, Defendant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.

84.     Plaintiff is informed and believes, and thereupon alleges, that Defendant's SWPPP does not set forth site-specific Best Management Practices (BMPs) for the facility that are consistent with BAT or BCT.

85.     Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the facility's SWPPP and site-specific BMPs consistent with the General Permit.

86.     In addition, Plaintiff alleges that Defendant has failed to comply with the provisions of its current SWPPP in the areas of monitoring and reporting.

87.     Information available to PEA indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events into the San Joaquin River.

88.     Plaintiff is informed and believes, and thereupon alleges, that all the violations alleged above with respect to Defendant's deficient SWPPP are ongoing and continuing.

Monitoring and Reporting

89.     On information and belief, PEA alleges that Defendant has an inadequate monitoring program at its facility.

90.     On information and belief, PEA alleges that since March 10, 2019, Defendant has failed to collect and analyze two storm water samples from the first half of each reporting year, and two storm water samples from the second half of each reporting year, as required by General Permit §XI(B).

91.     On information and belief, PEA alleges that Defendant has failed to conduct monthly visual observations of storm water discharges at the facility since at least March 10, 2019.

92.     On information and belief, PEA alleges that Defendant has collected samples of storm water discharges at the facility that failed to comply with the General Permit's requirement that samples be preceded by a 48-hour period without a discharge, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

93.     On information and belief, PEA alleges that Defendant has failed to collect storm water samples from each drainage area at all discharge locations at its facility, for each QSE where sampling is performed, pursuant to General Permit § XI(B), as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

94.     Specifically, Defendant has failed to put into its SWPPP a storm drain at the end of the driveway into the Facility. This is shown in Figure 1.



Figure 1. Storm drain at the end of Facility driveway.

95.     This drain is important to sample because PEA is informed and believes that Defendant's dirty trucks drop industrial wastes on the roads and driveways. This includes public roads, and the driveway leading into and out of the Facility. This is depicted in Figure 2.

  

Figure 2. Industrial waste droppings from trucks onto roadways and driveways.

96.     PEA is informed and believes that Defendant has failed to analyze the facility's storm water samples for the required parameters, in violation of Section XI(B)(6) of the General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

97.     On information and belief, PEA alleges that Defendant has failed to deliver the facility storm water samples to a qualified Laboratory within 48 hours of collection, pursuant to Attachment H, Section 2 of the General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

98.     PEA is informed and believes that Defendant has failed to upload facility storm water sample analyses within 30 days of obtaining the results of the sampling event, in violation of Section XI(B)(11) of the General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

99.     PEA is informed and believes that Defendant has failed to properly analyze its collected storm water sample for the parameter of pH, in violation of Section XI(C)(2)(a) of the

General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

Falsification of Annual Reports

100.    PEA is informed and believes that since March 10, 2019, Defendant has submitted inaccurate and/or falsified Annual Reports to the Regional Water Quality Control Board in violation of Sections XXI(L) and XXI(N) of the General Permit, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

Failure to Implement BAT/BCT and BMPs

101.    PEA is informed and believes that since at least March 10, 2019, Defendant has failed to identify and implement Best Management Practices ("BMPs") at its facility that comply with the requirements of the General Permit for best conventional treatment (BCT) for conventional pollutants, and best available technology (BAT) for toxic and non-conventional pollutants. These technology-based pollution controls are required to be implemented in a manner that reflects best industry practice considering technological availability and economic practicability and achievability.  General Permit §§ I(C), V(A).

102.    Defendant's BMP deficiencies are more particularly described in the Notice Letter attached hereto as **Exhibit A**.

103.    Specifically, PEA is informed and believes that since March 10, 2019, Defendant has failed to properly implement BMPs and regularly ensure that BMPs are followed.

104.    The following figures depict rusty open waste bins during rain events, dirty trucks during rain events, uncovered industrial matter left on the pavement, and other BMP violations.



Figure 3. Rusty and open waste bins during rain events.



Figure 4. Rusty equipment left open and exposed.



Figure 5. Open piles of industrial material left open and exposed.



Figure 6. Dirty trucks with dirty wheels dropping material on the pavement and drains.

105.    Information available to PEA indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events from the facility to the San Joaquin River.

Discharges of Contaminated Storm Water

106.     Defendant ReConserve of California has not collected and analyzed any storm water run-off since it first began operations at the facility.

107.     Information available to PEA indicates that unauthorized non-storm water discharges occur at the facility due to inadequate BMP development and/or implementation necessary to prevent these discharges, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

108.     Due to the nature of the operations at the facility, coupled with the documented lack of proper BMP implementation and unauthorized non-storm water discharges, Defendant ReConserve of California is discharging storm water containing excessive levels of pollutants specific to its operation during at least every significant local rain event.

109.     Since at least March 10, 2019, Defendant has reported numerous discharges in excess of narrative and numeric water quality standards established in the Basin Plan, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

110.     Since at least March 10, 2019, Defendant has reported numerous discharges in excess of the benchmark value and annual numeric action limits established by EPA and the Water Board, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

111.     Since at least March 10, 2019, Defendant has reported numerous discharges in excess of the Effluent Limitation Guidelines (ELGs) contained in 40 Code of Federal Regulations Chapter I, Subchapter N, commencing with Section 405, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

<u>Failure to Comply with Required Exceedance Response Actions</u>

112.    On July 1, 2019, Defendant was elevated to Level 1 Status for exceedances of TSS.

113.    Pursuant to Section XII of the General Permit, Defendant's Level 1 ERA Report was due to be prepared and uploaded into SMARTS by January 1, 2022.

114.    To date, Defendant has failed to submit a Level 1 ERA Report.

115.    Defendant submitted a Level 1 ERA report on January 31, 2024.  However, that Report is deficient, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

<u>Failure to Comply with a Mandate of the Regional Water Board</u>

116.    On  the Regional Water Board issued a Notice of Violation to Defendant for [list].

117.    The Notice of Violation required that Defendant correct the following issues &

118.    To date, Defendant ReConserve of California has failed to comply with the mandates of the Regional Water Board, as is more particularly described in the Notice Letter attached hereto as **Exhibit A**.

<u>Failure to Train Employees</u>

119.    The General Permit requires all Dischargers to designate a Legally Responsible Person to implement the requirements of the Permit.  The Legally Responsible Person is responsible for appointing a Pollution Prevention Team and ensuring that the Team is properly trained in at least the following minimum requirements: BMP implementation, BMP effectiveness evaluations, visual observations, and monitoring activities.

120.    Plaintiff is informed and believes that since at least March 10, 2019, Defendant ReConserve of California has failed to implement and train a Pollution Prevention Team at its facility.

**FIRST CAUSE OF ACTION**
**Failure to Prepare, Implement, Review, and Update**
**an Adequate Storm Water Pollution Prevention Plan**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

121.   Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

122.   The General Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP.

123.   As outlined herein, Defendant has failed to develop and implement an adequate SWPPP for its facility.

124.   Each day since March 10, 2019, that Defendant has failed to develop, implement and update an adequate SWPPP for the facility is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a). These violations are ongoing and continuous.

**SECOND CAUSE OF ACTION**
**Failure to Develop and Implement an**
**Adequate Monitoring and Reporting Program**
**(Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

125.   Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

126.   The General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including sampling and analysis of discharges) that complies with the terms of the General Permit.

127.   As outlined herein, Defendant has failed to develop and implement an adequate monitoring and reporting program for its facility.

128.    Each day since at least March 10, 2019, that Defendant has failed to develop and implement an adequate monitoring and reporting program for its facility in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a). The absence of requisite monitoring and analytical results are ongoing and continuous violations of the Act.

## THIRD CAUSE OF ACTION
### Submission of False Annual Reports to the Regional Water Board
### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

129.    Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

130.    Section XVI of the General Permit requires that Annual Reports submitted to SMARTS be certified under penalty of law, pursuant to Section XXI(L), which provides significant penalties for submitting false information.

131.    Specifically, Clean Water Action section 309(c)(4) and Section XXI(N) of the General Permit provide a maximum penalty to any person who knowingly makes a false material statement, representation or certification in any record or other documents submitted or required to be maintained under the General Permit, including Annual Reports, up to and including a fine of $10,000 and imprisonment of two years, or both.

132.    As delineated herein, Defendant ReConserve of California made false representations in the facility's Annual Report(s).

133.    Each time since March 10, 2019, that Defendant submitted false statements to the Water Board under penalty of perjury is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a). These violations are ongoing and continuous.

**FOURTH CAUSE OF ACTION**
**Failure to Implement the Best Available and**
**Best Conventional Treatment Technologies**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

134.    Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

135.    The General Permit's SWPPP requirements and Effluent Limitation V(A) of the General Permit require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

136.    As alleged herein, Defendant has failed to implement BAT and BCT at the facility for its discharges of pollutants, in violation of Effluent Limitation V(A) of the General Permit.

137.    Each day since at least March 10, 2019, that Defendant has failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

**FIFTH CAUSE OF ACTION**
**Discharges of Contaminated Storm Water**
**in Violation of Permit Conditions and the Act**
**(Violations of 33 U.S.C. §§ 1311, 1342)**

138.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

139.    Discharge Prohibition III(C) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water VI(B) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment.

Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the Permit prohibit storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

140.    Plaintiff is informed and believes, and thereupon alleges, that since at least 3/10/2019, Defendant ReConserve of California has been discharging polluted storm water from its facility, in excess of applicable water quality standards in violation of Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the General Permit.

141.    During every rain event, storm water flows freely over exposed materials, waste products, and other accumulated pollutants at both facilities, becoming contaminated with pollutants associated with the industrial activity occurring at Defendant's facility.   The polluted storm water then flows untreated into the San Joaquin River.

142.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing or contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitations of the General Permit.

143.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitations of the General Permit.

144.    Every day since at least March 10, 2019, that Defendant has discharged and continues to discharge polluted storm water from its facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

**SIXTH CAUSE OF ACTION**
**Failure to Comply with Required Exceedance Response Actions**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

145. Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

146. The General Permit requires that all Dischargers who enter Level 1 or Level 2 status comply with specific Exceedance Response Actions delineated in Section XII of the General Permit.

147. As herein alleged, Defendant ReConserve of California has failed to date to comply with the Exceedance Response Actions required of it by the General Permit.

148. Each day since March 10, 2019, that Defendant has failed to comply with the Exceedance Response Actions required by the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a). These violations are ongoing and continuous.

**SEVENTH CAUSE OF ACTION**
**Failure to Comply with the Mandates of the Regional Water Board**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

149. Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

150. Regional Water Boards have general authority to enforce the provisions and requirements of the General Permit, including reviewing SWPPPs, Monitoring Implementation Plans, ERA Reports, and Annual Reports and requiring Dischargers to revise and re-submit PRDs, conducting compliance inspections, and taking enforcement actions. General Permit Section XIX

151.   On May 10, 2019, the Central Valley Regional Water Quality Control Board issued Defendant ReConserve of California a Notice of Violation requiring that Defendant  by May 15, 2023.

152.   To date, Defendant has failed to comply.

153.   Each day since May 15, 2023, that Defendant has failed to comply with the mandates of the Regional Water Board is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

**EIGHTH CAUSE OF ACTION**
**Failure to Properly Train facility Employees and Pollution Prevention Team**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

154.   Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

155.   Section X(D)(1) of the General Permit requires each facility to establish a Pollution Prevention Team responsible for implementing the requirements of the General Permit. The facility is also required to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned Pollution Prevention Team members are temporarily unavailable (due to vacation, illness, out of town business, or other absences).

156.   Section X(H)(f) of the General Permit also requires that each facility ensure that all of its Pollution Prevention Team members implementing the various compliance activities of the General Permit are properly trained.

157.   Since at least March 10, 2019, Defendant has failed to properly implement and train a Pollution Prevention Team, which has resulted in the General Permit violations alleged herein. These violations are ongoing and continuous.

## NINTH CAUSE OF ACTION
### (Recovery Under the Catalyst Theory CCP §1021.5)

158. Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

159. Under the substantive law of California, if a plaintiff is a catalyst in encouraging a Defendant to voluntarily comply with its legal obligations, the plaintiff may recover its fees and costs. *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 21 Cal. Rptr. 3d 331, 34 Cal. 4th 553 (2004), *Tipton-Wittingham v. City of Los Angeles* (Cal.Dec. 2, 2004), 34 Cal.4th 604, 21 Cal.Rptr.3d 371, 101 P.3d. 174, 2004 Cal. LEXIS 11335.

160. A requirement for recovery under the catalyst theory is that a plaintiff first advise the Defendant of the claim and provide an opportunity to resolve the matter. The Plaintiff in this case complied by providing both the catalyst and the written notice of the claim to Defendants prior to suit.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1.      Declare Defendant to have violated and to be in violation of the CWA;

2.      Issue an injunction ordering Defendant to immediately operate its facility in compliance with the NPDES permitting requirements contained in the General Permit and the CWA;

3.      Enjoin Defendant ReConserve of California from discharging pollutants to the surface waters surrounding its facility until such time as Defendant has developed and implemented an adequate SWPPP and implemented appropriate BMPs;

4.      Order Defendant to pay civil penalties of $56,460.00 per day/per violation for each violation of the Act pursuant to 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1, 19.2-19.4;

5.      Order Defendant ReConserve of California to take appropriate actions to restore the quality of United States waters impaired by activities at its facility;

6.      Order Defendant to pay PEA's reasonable attorneys' fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law;

7.      Award Plaintiff additional attorney fees under California Code of Civil Procedure §1021.5, to the extent that Plaintiff's Notice of Intent to Sue directed to Defendant was the catalyst for Defendant's voluntary corrective action or cessation of the violations included in Plaintiff's Notice, provided that Defendant undertook any such corrective action after receiving Plaintiff's Notice, and;

8.      Award such other and further relief as may be just and proper.

Dated:  November 11, 2024                    Respectfully,

By: _____
      Xhavin Sinha (CA Bar #309340)
      SINHA LAW
      3901 Lick Mill Blvd. Ste. 356
      Santa Clara, CA 95054
      Tel.: 408-791-0432
      Attorney for Plaintiff

# EXHIBIT A



March 25, 2024

<u>Via US Mail, Certified and Email</u>

Ron Alexander
Facility Manager
ReConserve of California – Stockton, Inc.
704 Zephyr Street
Stockton, CA 95206
Email:  [ralexander@reconserve.com](mailto:ralexander@reconserve.com)

<u>Via US Mail</u>

C T Corporation System
Agent for ReConserve, Inc.
330 North Brand Boulevard
Glendale, CA  91203

Meyer Luskin
Chief Executive Officer
ReConserve, Inc.
2811 Wilshire Boulevard, Suite 410
Santa Monica, CA  90403

Keith Rudd
Vice President of Environmental Health and Safety
ReConserve, Inc.
2811 Wilshire Boulevard, Suite 410
Santa Monica, CA  90403
Email:  [krudd@reconserve.com](mailto:krudd@reconserve.com)

**Re:   First Amended 60-Day Notice of Violations and Intent to File Suit Under the
        Federal Water Pollution Control Act ("Clean Water Act")**

To Officers, Directors, Operators, Property Owners and/or Facility Managers of ReConserve of
California Stockton Inc:

This letter is being sent to you on behalf of Pacific Environmental Advocates, LLC ("PEA") to give legal notice that PEA intends to file a civil action against ReConserve Of California - Stockton, Inc., ReConserve, Inc. ("Discharger" or "ReConserve of California") and the respective corporate officers and other legally responsible parties for violations of the Federal Clean Water Act ("CWA" or "Act") 33 U.S.C. § 1251 *et seq.,* that PEA believes are occurring at the ReConserve of California facility located at 704 Zephyr Street in Stockton, California ("the Facility" or "the site").

PEA is an environmental citizen's group established under the laws of the State of California to protect, enhance, and assist in the restoration of all rivers, creeks, streams, sloughs, lakes and tributaries of California, for the benefit of its ecosystems and communities.

As discussed below, the Facility's discharges of pollutants degrade water quality and harm aquatic life in the Facility's Receiving Waters, which are waters of the United States and are described in Section II.B, below.  PEA has members throughout California.  Some of PEA's members live, work, and/or recreate near the Receiving Waters and use and enjoy the Receiving Waters for kayaking, canoeing, camping, fishing, duck hunting, boating, swimming, hiking, cycling, bird watching, picnicking, viewing wildlife, and/or engaging in scientific study.

At least one of PEA's current members has standing to bring suit against ReConserve of California, as the unlawful discharge of pollutants from the Facility as alleged herein has had an adverse effect particular to him or her and has resulted in actual harm to the specific PEA member(s).

Further, the Facility's discharges of polluted storm water and non-storm water are ongoing and continuous.  As a result, the interests of certain individual PEA members have been, are being, and will continue to be adversely affected by the failure of ReConserve of California to comply with the General Permit and the Clean Water Act.

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of intent to file suit. 33 U.S.C. § 1365(b). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the EPA in the state in which the violations occurred or are occurring.

As required by CWA section 505(b), this Notice of Violation and Intent to File Suit provides notice to the Discharger of the violations which have occurred and continue to occur at the Facility.  After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, PEA reserves the right to file suit in federal court against ReConserve of California under CWA section 505(a) for the violations described more fully below, if this matter cannot be resolved.

## I.     THE SPECIFIC STANDARD, LIMITATION OR ORDER VIOLATED

PEA's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the General Industrial Storm Water Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board ("SWRCB")] Water Quality Order No. 2014-0057-DWQ as amended by Orders 2015-0122-DWQ and 2018-0028-DWQ) (hereinafter "General Permit").

Information available to PEA, including documents obtained from California EPA's online Storm Water Multiple Application and Reporting Tracking System ("SMARTS"), indicates that on or around September 25, 2022, ReConserve of California submitted a Notice of Intent ("NOI") to be authorized to discharge storm water from the Facility under the General Permit. ReConserve of California's assigned Waste Discharger Identification number ("WDID") is 5S39I017506.

As more fully described in Section III, below, PEA alleges that in its operations of the Facility, ReConserve of California has committed ongoing violations of the substantive and procedural requirements of the Federal Clean Water Act, California Water Code §13377, et seq; the General Permit; the Regional Water Board Basin Plan; the California Toxics Rule (CTR); 40 C.F.R. Chapter I, Subchapter N, § 400, et seq.; and California Code of Regulations, Title 22, § 64431.

## II.     THE LOCATION OF THE ALLEGED VIOLATIONS

### A.   The Facility

The location of the point sources from which the pollutants identified in this Notice are discharged in violation of the CWA is ReConserve of California's permanent facility address of 704 Zephyr Street in Stockton, California.

ReConserve of California is a facility that recycles food by-products for livestock feed. Facility operations are covered under Standard Industrial Classification Codes (SIC) 2048 - Prepare feeds and animal slaughtering.

Based on the EPA's Industrial Storm Water Fact Sheet for industrial businesses with the SIC code of 2048, stormwater run-off discharges contain many pollutants on the list of chemicals published by the State of California known to cause cancer, birth defects, and/or developmental or reproductive harm, including toxic and heavy metals, pH affecting substances, total suspended solids (TSS), and various types of oil and grease (O&G), as well as and iron, aluminum, chemical oxygen demand (COD), e.coli, zinc, nitrates and nitrites (N+N), biological oxygen demand (BOD), and specific/electrical conductivity (EC).

Information available to PEA indicates that the Facility's industrial activities and associated materials are exposed to storm water, and that each of the substances listed on the EPA's Industrial Storm Water Fact Sheet is a potential source of pollutants at the Facility.

### B.  **The Affected Receiving Waters**

The Facility discharges into City of Stockton Municipal Separate Storm Sewer System (MS4) which discharges to the City of Stockton retention pond.  The pond then discharges to Duck Creek, which flows into Walker Slough and then onto French Camp Slough, which is a tributary to the San Joaquin River ("Receiving Waters"). Duck Creek, Walker Slough, French Camp Slough and the San Joaquin River are impaired for Chlorpyrifos, Diazinon, Dissolved Oxygen, E Coli and Enterococcus, Carcinogenic Pesticide Screen, Mercury, and Total DDT (including DDD, DDE and DDT).

The San Joaquin River is a water of the United States.  The CWA requires that water bodies such as the San Joaquin River meet water quality objectives that protect specific "beneficial uses." The Regional Water Board has issued its *Water Quality Control Plan for the Sacramento-San Joaquin Delta Basin* ("Basin Plan") to delineate those water quality objectives.

The Basin Plan identifies the "Beneficial Uses" of water bodies in the region.  The Beneficial Uses for the Receiving Waters downstream of the Facility include: Municipal and Domestic Supply (MUN), Agricultural Supply (AGR), Industrial Process Supply (PRO), Industrial Service Supply (IND), Navigation (NAV), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM), Cold Freshwater Habitat (COLD), Wildlife Habitat (WILD), Migration (MIGR), and Spawning, Reproduction, and/or Early Development (SPWN).

A water body is impaired pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), when its Beneficial Uses are not being achieved due to the presence of one or more pollutants.  Polluted storm water and non-storm water discharges from industrial facilities, such as the Facility, contribute to the further degradation of already impaired surface waters, and harm aquatic dependent wildlife.

### III.    VIOLATIONS OF THE CLEAN WATER ACT AND GENERAL PERMIT

### A.  *Deficient SWPPP and Site Map*

ReConserve of California's current Storm Water Pollution Prevention Plan ("SWPPP") and Site Map for the Facility are inadequate and fail to comply with the requirements of the General Permit as specified in Section X of the General Permit, as delineated below.

1.      The Site Map does not include the minimum required components for Site Maps as indicated in Section X.E of the General Permit:

     (a)  sampling points which are representative of facility operations; and

     (b)  sample locations if different than the identified discharge locations.

2.     The SWPPP does not include all the required elements, as indicated below:

     (a)  The facility's **scheduled operating hours**, including irregular operating hours (i.e. temporary, intermittent, seasonal, weather dependent) (Section X.D.2.d);

     (b)  An appropriate discussion of the **Industrial Materials** handled at the facility, including the locations where the materials are stored, received, shipped and handled, and the quantities and handling frequency of the Industrial Materials (Sections X.A.3, X.F, X.G.1.a);

     (c)  A detailed, accurate and complete discussion of **Facility operations and all industrial processes** at the Facility, including manufacturing, cleaning, maintenance, recycling, disposal, and any other activities related to each industrial process; and the type, characteristics, and approximate quantity of industrial materials used in or resulting from the process. Areas protected by containment structures and the corresponding containment capacity are also required to be identified and described. (X.G.1.a);

     (d)  An accurate and complete description of **Potential Pollutant Sources** and narrative assessment of all areas of industrial activity with potential industrial pollutant sources, including Industrial Processes, Material Handling and Storage Areas, Dust and Particulate Generating Activities, Significant Spills and Leaks, Non-Storm Water Discharges and Erodible Surfaces (Section X.G);

     (e)  Adequate mandatory **Minimum Best Management Practices** (BMPs), including Good Housekeeping, Preventive Maintenance, Spill and Leak Prevention and Response, Material Handling and Waste Management, Erosion and Sediment Controls, Employee Training Program and Quality Assurance and Record Keeping (Section X.H.1);

     (f)  Adequate **Advanced BMP**s required to comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the General Permit to reduce or prevent discharges of pollutants in the Facility's storm water discharge in a manner that reflects best industry practice, considering technological availability and economic practicability and achievability, including Exposure Minimization BMPs, Storm Water Containment and Discharge Reduction BMPs or Treatment Control BMPs

(Section X.H.2);

(g)  A **BMP Summary Table** summarizing each identified area of industrial activity, the associated industrial pollutant sources, the industrial pollutants and the BMPs being implemented (Section X.H.4 and X.H.5);

(h)  An appropriate **Monitoring Implementation Plan**, including **an identification of team members assigned to conduct monitoring requirements**, a detailed and accurate description of all discharge locations, a discussion of Visual Observation procedures, justifications for alternative discharge locations, if any, procedures for field instrument calibration instructions, and an example Chain of Custody form to be used when handling and shipping water quality samples to the lab (Section X.I);

(i)  An adequate and accurate discussion of the **Facility's Receiving Waters.** (Section XI.B.6.e, Section X.G.2.ix);

(j)  An adequate pollutant source assessment and the corresponding proper **sampling parameters** to include all potential pollutants present at the facility likely to come into contact with stormwater (Section XI.B.6).

PEA's investigation confirms that iron, aluminum, zinc, COD, BOD, e.coli, N+N and EC are present in industrial operations at the Facility.  The SWPPP fails to include these pollutants as **additional sampling parameters**, in violation of Section XI.B.6.c of the General Permit.

(k)  An appropriate and complete discussion of **drainage areas and Outfalls** from which samples must be taken during Qualified Storm Events (Section XI);

(l)  A discussion of whether the Facility is subject to 40 CFR Subchapter N ELGs, or incorrectly states that the Facility is not subject to the ELGs;

Failure to develop or implement an adequate SWPPP is a violation of Sections II.B.4.f and X of the General Permit.

## B.  *Failure to Update SWPPP*

As discussed in herein, the Facility was inspected on March 29, 2023, by Regional Water Board inspector Lowell Cottle.  During that inspection, the inspector noted that the Facility's SWPPP was deficient and requested that an amended SWPPP be prepared and uploaded to the SMARTS database.

A Notice of Violation issued shortly thereafter as a result of the inspection indicated that the Facility SWPPP must be updated to comply with Section X of the General Permit.

As of the date of this Notice, ReConserve of California has failed to upload an adequate SWPPP pursuant to the mandates of the Regional Water Board and the General Permit.

As discussed above, the Facility entered Level 1 Status on July 1, 2019.  The Level 1 ERA Report prepared by the QISP Micheline Kipf on January 31, 2024 indicated a number of recommended BMP additions and modifications that, pursuant to Section XII(C)(2)(a) of the General Permit, required the Facility to update its SWPPP no later than January 1 following the Facility's entry into Level 1 Status.

As of the date of this Notice, ReConserve of California has failed to upload an amended SWPPP pursuant to Sections X.B and XII.C.2.a of the General Permit.

Section X.B of the General Permit provides that all Facilities must revise their on-site SWPPP whenever necessary.  Furthermore, all Dischargers are to upload to SMARTS a revised SWPPP within thirty (30) days whenever the SWPPP contains significant revisions; and within ninety (90) days when the SWPPP contains routine revisions.

ReConserve of California was required to update its SWPPP and upload it to SMARTS no later than January 1, 2020, but failed to do so.

### C. Failure to Develop, Implement and/or Revise an Adequate Monitoring and Reporting Program Pursuant to the General Permit

Section XI of the General Permit requires Dischargers to develop and implement a storm water monitoring and reporting program ("M&RP") prior to conducting industrial activities. Dischargers have an ongoing obligation to revise the M&RP as necessary to ensure compliance with the General Permit.

The objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge, and to ensure compliance with the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations.  An adequate M&RP ensures that BMPs are effectively reducing and/or eliminating pollutants at the Facility, and it must be evaluated and revised whenever appropriate to ensure compliance with the General Permit.

1. Failure to Conduct Visual Observations and Maintain Required Records/Reports

Section XI.A of the General Permit requires all Dischargers to conduct visual observations at least once each month, and sampling observations at the same time sampling occurs at a discharge location.

Section XI.A.3 required all Dischargers to complete contemporaneous records of all visual observations.  The records at a minimum must include the date, approximate time of the

observation, the locations observed, the presence and probable source of any observed pollutants, the name of the person who conducted the observation, and any response actions and/or additional SWPPP revisions necessary to be taken in response to the visual observations.

Section XXI.H provides that Dischargers must produce copies of visual observation records to regulatory agencies upon request; and Section XXI.J.5 provides that Dischargers must retain either paper or electronic copies of visual observation records for at least five (5) years.

PEA believes that between March 10, 2019 and the present, ReConserve of California has failed to conduct monthly and sampling visual observations pursuant to Section XI.A of the General Permit and to maintain contemporaneous written Visual Observation Reports confirming that visual observations were conducted.

2.  <u>Failure to Collect and Analyze the Required Number of Storm Water Samples</u>

In addition, PEA alleges that ReConserve of California has failed to provide the Regional Water Board with the minimum number of annual documented results of Facility run-off sampling as required under Sections XI.B.2 and XI.B.11.a of the General Permit, in violation of the General Permit and the CWA.

Section XI.B.2 of the General Permit requires that all Dischargers collect and analyze storm water samples from two Qualifying Storm Events ("QSEs") within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30).

Section XI.C.6.b provides that if samples are not collected pursuant to the General Permit, a proper and accurate explanation must be included in the Annual Report.

As of the date of this Notice, ReConserve of California has failed to upload into the SMARTS database system the required number of storm water run-off sample analyses for the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 and has not provided an adequate explanation for its failure to do so.

3.  <u>Failure to Collect Storm Water Run-Off Samples during Qualified Storm Events</u>

Pursuant to Section XI.B.1 of the General Permit, a Qualified Storm Event (QSE) is a precipitation event that both produces a discharge for at least one drainage area at the Facility and is also preceded by 48 hours with no discharge from any drainage area.

The General Permit defines "drainage area" as the "area of land that drains water, sediment, pollutants, and dissolved materials to a common discharge location."   (Attachment C to General Permit-Glossary)

ReConserve of California's stormwater runoff samples collected as listed below were not collected during Qualified Storm Events as defined by the General Permit:

| Sample Date | QSE Info |
|---|---|
| 4/25/2016 | Not a valid QSE – 3rd consecutive day of rainfall |
| 10/27/2016 | Not a valid QSE – 3rd consecutive day of rainfall |
| 1/16/2019 | Not a valid QSE – 3rd consecutive day of rainfall |
| 5/16/2019 | Not a valid QSE – 3rd consecutive day of rainfall |
| 12/2/2019 | Not a valid QSE – 3rd consecutive day of rainfall |
| 11/8/2022 | Not a valid QSE – 3rd consecutive day of rainfall |

4. <u>Failure to Upload Storm Water Sample Analyses within 30 Days</u>

Section XI.B.11.a of the General Permit requires Dischargers to submit all sampling and analytical results for all individual or Qualified Combined Samples via SMARTS within 30 days of obtaining all results for each sampling event.

ReConserve of California failed to upload into SMARTS within 30 days the following sampling and analytical results pursuant to Section XI.B.11.a of the General Permit:

| Sample Date | Lab Report Receipt Date | Date Uploaded into SMARTS |
|---|---|---|
| 1/16/2019 | 2/1/2019 | 5/16/2019 |
| 12/2/2019 | 12/31/2019 | 6/22/2020 |
| 1/22/2021 | 2/8/2021 | 7/13/2021 |
| 11/8/2022 | 12/2/2022 | 6/15/2023 |
| 3/29/2023 | 4/21/2023 | 6/13/2023 |

5. <u>Failure to Collect Samples From Each Drainage Area at all Discharge Locations</u>

Section XI.B.4 of the General Permit requires Dischargers to collect samples from all discharge locations, regardless of whether the discharges are substantially similar. Dischargers may analyze a combined sample consisting of equal volumes, collected from as many as four substantially similar discharge locations, provided that the Discharger submits a Representative Sampling Reduction Justification form with its sample analysis, and the samples are combined in the lab in accordance with Section XI.C.5 of the General Permit. Furthermore, Representative sampling is only allowed for sheet flow discharges or discharges from drainage areas with multiple discharge locations.

According to ReConserve of California's current SWPPP, the Facility has 3 discharge locations, listed as  D1, D2 and unlisted (driveway discharge).   The storm water runoff sample analyses ReConserve of California uploaded for samples collected on the dates listed below failed to include samples from Outfall:  unlisted (driveway discharge).

| 12/3/2015 | 12/2/2019 |
|-----------|-----------|
| 3/4/2016 | 1/22/2021 |
| 4/25/2016 | 4/21/2022 |
| 10/27/2016 | 11/8/2022 |
| 2/26/2018 | 3/29/2023 |
| 1/16/2019 | 5/2/2023 |
| 5/16/2019 | 12/20/2023 |

Furthermore, the Facility did not submit a Representative Sampling Reduction Justification form with any of its sample analyses.

6. Failure to Analyze Storm Water Samples for the Correct Parameters

General Permit sections XI.B.6.a and XI.B.6.b require all Dischargers to analyze for the following three parameters, regardless of facility type:  pH, Total Suspended Solids (TSS) and Oil & Grease (O&G).

Section XI.B.6.c of the General Permit requires Dischargers to analyze for any additional parameters identified by the Discharger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment contained in the Facility's SWPPP.

PEA's investigation confirms that the following additional parameters are to be included in the sampling process, as they are associated with the Facility's industrial operations:  **iron** (boneyard), **aluminum** (boneyard), **COD** (biological wastes), **e.coli** (food waste), **zinc** (truck traffic), **N+N** (waste grains), **BOD** (various wastes), and **EC** (food salts and limestone).

Section XI.B.6.e of the General Permit requires Dischargers to analyze for any additional applicable industrial parameters related to receiving waters with 303(d) listed impairments or approved TMDLs based on the assessment in Section X.G.2.a.ix. Test methods with lower detection limits may be necessary when discharging to receiving waters with 303(d) listed impairments or TMDLs.

The storm water runoff sample analyses ReConserve of California uploaded for samples collected on the dates listed below failed to include additional sampling parameters as outlined above.

| | |
|---|---|
| 12/3/2015 | 12/2/2019 |
| 3/4/2016 | 1/22/2021 |
| 4/25/2016 | 4/21/2022 |
| 10/27/2016 | 11/8/2022 |
| 2/26/2018 | 3/29/2023 |
| 1/16/2019 | 5/2/2023 |
| 5/16/2019 | 12/20/2023 |

### D.  Inaccurate and Deficient Annual Reports Submitted to the Water Board

Section XXI.L of the General Permit provides as follows:

### L. Certification

Any person signing, certifying, and submitting documents under Section XXI.K above shall make the following certification:

*"I certify under penalty of law that this document and all Attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system or those persons directly responsible for gathering the information, to the best of my knowledge and belief, the information submitted is, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."*

ReConserve of California has failed to comply with Sections XVI.A and XXI.L of the General Permit by failing to submit complete and accurate Annual Reports to the Regional Water Board for the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023.

The Annual Reports included Attachment 1 as an explanation for why ReConserve of California failed to collect and analyze stormwater run-off during the required number of Qualifying Storm Events during the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 for all discharge locations, in accordance with Section XI.B.

Ron Alexander certified in the Reports, under penalty of perjury, that the required number of stormwater samples were not collected by the Facility because [allegedly] there were insufficient qualifying storm water discharges during the reporting years and scheduled facility operating hours.

However, records from the National Oceanic and Atmospheric Administration (NOAA) website/database confirm that during the reporting years in question there were in fact sufficient Qualified Storm Events (QSEs) occurring near the Facility during or within 12 hours of the start of regular business hours to allow ReConserve of California to have collected the requisite number of samples.

Specifically, ReConserve of California's Annual Reports submitted to the Regional Water Board through the SMARTS system on July 10, 2019, June 22, 2020, July 13, 2021, October 10, 2022 and June 15, 2023 did not contain an acceptable reason for why the Facility failed to collect the appropriate number of stormwater samples. Further, the Facility did not provide documentation regarding the alleged lack of discharge.

### E.  *Failure to File Timely Annual Reports*

ReConserve of California has failed to comply with Section XVI.A of the General Permit, which provides as follows: "The Discharger shall certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year using the standardized format and checklists in SMARTS."

ReConserve of California's Annual Report for the reporting year 2021-2022 was filed late on October 10, 2022.

### F.  *Deficient BMP Implementation*

Sections I.C, V.A and X.C.1.b of the General Permit require Dischargers to identify and implement minimum and advanced Best Management Practices ("BMPs") that comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the General Permit to reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice, considering technological availability and economic practicability and achievability.

PEA alleges that ReConserve of California has been conducting industrial activities at the site without adequate BMPs to prevent resulting non-storm water discharges. Non-storm water discharges resulting from these activities are not from sources that are listed among the authorized non-storm water discharges in the General Permit, and thus are always prohibited.

ReConserve of California's failure to develop and/or implement adequate BMPs and pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial General Permit each day the Facility discharges storm water without meeting BAT and BCT.

First Amended 60-Day Notice of Intent to Sue
ReConserve of California
March 25, 2024
Page 13 of 30

_Specific BMP Deficiencies_

On March 29, 2023, the Facility was inspected by Lowell Cottle and Devon Owens of the Regional Water Quality Control Board.  During that inspection, Mr. Cottle and Mr. Owens noted the following BMP and monitoring and reporting deficiencies:

- Significant amounts of sediment and food waste were observed in the northeast area of the yard          (Photos 1 through 5). Sediment and food waste were discharging to the storm drain system.
- Heavy buildup of sediment was observed in the east and south areas of the yard (Photos 6 through    8). Several uncovered waste bins were observed during a rain event (Photo 8).
- Accumulated food waste and trash were observed around a red-dye diesel fuel tank on the south perimeter of the Facility (Photo 9).
- Tracking from commercial trucks was observed in the south and east areas of the yard (Photos 10 through 13).
- Crushed limestone was observed on the ground throughout the silo area. The crushed limestone was observed discharging from the silo area to the storm drain system (Photos 14 through 17).
- A large pile of food waste with stormwater exposure located next to the limestone silo (Photo 18).
- Oil staining was observed on the 12,000-gallon diesel fuel tank; the tank has no secondary containment in place. Sediment and trash were observed on the ground throughout the fueling area (Photos 19 and 20).
- Truck trailers are cleaned out in an area with ineffective containment. Sediment and food waste were observed outside the containment area (Photos 21 through 23).
- There is a bone yard located in the southeast corner of the yard containing scrap metals with stormwater exposure (Photo 24).
- Vehicle and equipment maintenance is conducted inside the maintenance shop (Photo 25).
- Waste oils and used antifreeze were in secondary containment (Photo 26).
- The East and West Drainage Inlets discharge directly to the Stockton City MS4. Note: This area was cleaned two days prior to the inspection in response to the Cease and Desist Order issued by the City of Stockton (Photos 27 through 29).
- Sediment was leaving the site at the Exit/Entrance and discharging to the storm drain system (Photo 30).
- The SWPPP was on site but missing required elements and is outdated.
- Monthly Visual Observations, Sampling Event Visual Observations, and the Annual Comprehensive Site Evaluation inspections were not available at the time of inspection.

- The SWPPP and Site Map uploaded to SMARTS are outdated and missing required elements.
- The Discharger has not submitted AD Hoc sample reports since coverage began.
- All sample results going back to 2018 have shown exceedances for one or more of the following parameters: Oil & Grease, pH, and TSS.
- A review of submitted sample results shows the Facility should currently be in Level II for Oil and Grease and TSS; and in Level I for pH.
- The Discharger was issued a 13267 Letter - Notice of Violation (NOV) on 10 May 2019 for failure to collect and analyze stormwater samples.
- The Discharger has failed to collect samples for the required number of Qualifying Storm Events (QSEs) since coverage began.

On July 1, 2021, the Facility entered Level 1 status for annual average exceedances of pH.

.

On August 17, 2023, QISP Micheline Kipf evaluated the facility, pursuant to Exceedance Response Action requirements of the General Permit. The Level 1 ERA report certified on January 31, 2024, indicated the following BMP deficiencies:

- Inadequate material pile and boundary control BMPs
- Inadequate driveway entrance sheetflow mitigation
- Inadequate inlet filtration
- Inadequate housekeeping
- Inadequate exposure minimization
- Inadequate record keeping
- Inadequate BMP maintenance
- Inadequate pollution prevention team training

On July 1, 2020, the Facility entered Level 2 status for annual average exceedances of TSS. As of the date of this Notice, no BMP update documentation have been submitted to SMARTS.

PEA's investigation confirms that some or all of the aforementioned BMP deficiencies are continuing to occur at the Facility.

### G. *Discharges In Violation of the General Permit*

Except as authorized by Special Conditions of the General Permit, Discharge Prohibition III(B) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Unauthorized non-storm water discharges must be either eliminated or permitted by a separate NPDES permit.

First Amended 60-Day Notice of Intent to Sue
ReConserve of California
March 25, 2024
Page 15 of 30

Information available to PEA indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges.

PEA alleges that the Discharger has discharged storm water containing excessive levels of pollutants from the Facility to its Receiving Waters during at least every significant local rain event over 0.1 inches in the last five (5) years.

PEA hereby puts the Discharger on notice that each time the Facility discharges prohibited non-storm water in violation of Discharge Prohibition III.B of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

1.  Discharges in Excess of Technology-Based Effluent Limitations

The Industrial General Permit includes technology-based effluent limitations, which prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants.  (General Permit, Section X.H.)

The EPA has published Benchmark values set at the maximum pollutant concentration levels present if an industrial facility is employing BAT and BCT, as listed in Table 2 of the General Permit.  The General Permit includes "Numeric Action Levels" ("NALs") derived from these Benchmark values; however, the NALs do not represent technology-based criteria relevant to determining whether an industrial facility has implemented BMPs that achieve BAT/BCT. (General Permit, Section I.M. (Finding 62)).

ReConserve of California's exceedances of Benchmark values identified in the table listed below, indicate that it has failed and is failing to employ measures that constitute BAT and BCT, in violation of the requirements of the Industrial General Permit.   PEA alleges and notifies ReConserve of California that its storm water discharges from the Facility have consistently contained and continue to contain levels of pollutants that exceed Benchmark values as listed below.

These allegations are based on the Facility's self-reported data submitted to the Regional Water Board.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil,* 813 F.2d 1480, 1492 (9th Cir. 1988).

ReConserve of California's ongoing discharges of storm water containing levels of pollutants above EPA Benchmark values and BAT- and BCT-based levels of control also demonstrate that it has not developed and implemented sufficient BMPs at the Facility.  EPA

Benchmarks are relevant to the inquiry as to whether a facility has implemented BMPs. [*Cal. Sportfishing Prot. Alliance v. River City Waste Recyclers, LLC* (E.D.Cal. 2016) 205 F.Supp.3d 1128; *Baykeeper v. Kramer Metals, Inc.* (C.D.Cal. 2009) 619 F.Supp.2d 914, 925; *Waterkeepers Northern California v. AG Industrial Mfg. Inc.* (9th Cir. 2004) 375 F.3d 913, 919 (concentration levels in excess of EPA benchmarks are evidence supporting the citizen plaintiff's contention that defendant did not have appropriate BMPs to achieve BAT/BCT).]

ReConserve of California's failure to develop and/or implement adequate BMPs and pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial General Permit each day the Facility discharges storm water without meeting BAT and BCT.

2.   Discharges in Excess of Receiving Water Limitations

In addition to employing technology based effluent limitations, the Industrial General Permit requires dischargers to comply with Receiving Water Limitations.   Receiving Water Limitations found in Section VI of the General Permit prohibit storm water discharges and authorized non-storm water discharges to surface water that adversely impact human health or the environment.

Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment also constitute violations of the General Permit Receiving Water Limitation.

Applicable Water Quality Standards ("WQS") are set forth in the California Toxics Rule ("CTR") and the Regional Basin Plan.   Exceedances of WQS are violations of the Industrial General Permit, the CTR, the Basin Plan, any parameter included as an impairment for the Facility's Receiving Waters on the 303(d) listing, and any parameters identified by the Regional Water Board as parameters assigned a total maximum daily load (TMDL).

Industrial storm water discharges must strictly comply with WQS, including those criteria listed in the applicable Basin Plan.  (See *Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1166-67 (9th Cir. 1999).)

The Basin Plan establishes WQS for the San Joaquin River and its tributaries, including but not limited to the following:

• Waters shall not contain substances in concentrations that result in the deposition of material that cause nuisance or adversely affect beneficial uses.

• Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.

• Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.

•    All waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce other detrimental responses in aquatic organisms.

• Surface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use.

Information available to PEA indicates that the Facility's storm water discharges contain elevated concentrations of specific pollutants, as listed below.   These polluted discharges can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters.  Discharges of elevated concentrations of pollutants in the storm water from the Facility also adversely impact human health.  These harmful discharges from the Facility are violations of the General Permit Receiving Water Limitation.

Further, PEA puts ReConserve of California on notice that the Receiving Water Limitations are independent requirements that must be complied with, and that carrying out the process triggered by exceedances of the NALs listed at Table 2 of the General Permit does not amount to compliance with the Receiving Water Limitations.  The NALs do not represent water quality-based criteria relevant to determining whether an industrial facility has caused or contributed to an exceedance of a WQS, or whether it is causing adverse impacts to human health or the environment.

Section XX.B of the General Permit provides that when a facility's industrial storm water discharges and/or authorized NSWDs are determined to contain pollutants that are in violation of Receiving Water Limitations contained in Section VI, the Discharger must conduct a facility evaluation to identify pollutant source(s) within the facility that are associated with industrial activity and whether the BMPs described in the SWPPP have been properly implemented, assess its current SWPPP, and certify via SMARTS any additional BMPs identified which are necessary in order to meet the Receiving Water Limitations.

PEA alleges that from at least  March 10, 2019 to the present, ReConserve of California has been in violation of the Receiving Water Limitations provision of Section VI of the General Permit, as evidenced by its exceedances of the applicable Water Quality Standards set forth in the Regional Basin Plan, indicated below.

Specifically, ReConserve of California's sample analyses summarized below violate the strict numeric effluent limitations (NELs) established for San Joaquin River and French Camp Slough Duck Creek.

First Amended 60-Day Notice of Intent to Sue
ReConserve of California
March 25, 2024
Page 18 of 30

Further, ReConserve of California has failed to comply with Section XX.B of the General Permit. Failure to comply with the additional Water Quality-Based Corrective Action requirements listed in Section XX.B is an additional violation of the General Permit.

The following discharges of pollutants from the Facility have violated Discharge Prohibitions of the General Permit and are evidence of ongoing violations of Effluent Limitations:

| Sample Collection Date | Outfall | Parameter | Sample Analysis Result* |
|---|---|---|---|
| **Reporting Year 2018-19** | | | |
| 1/16/2019 | East Outfall | O&G | 18.7 |
| | | TSS | 258 |
| | | pH | Not tested |
| | West Outfall | O&G | 16 |
| | | pH | Not tested |
| 5/16/2019 | East Outfall | TSS | 142 |
| | | pH | Not tested |
| | West Outfall | O&G | 16.5 |
| | | TSS | 216 |
| | | pH | Not tested |
| | | | |
| **Reporting Year 2019-20** | | | |
| 12/2/2019 | East Outfall | TSS | 104 |
| | West Outfall | O&G | 29.2 |
| | | TSS | 276 |
| | | pH | 6.3 |
| | | | |
| **Reporting Year 2020-21** | | | |
| 1/22/2021 | East Outfall | O&G | 27.8 |
| | | TSS | 592 |
| | | pH | 10 |
| | West Outfall | O&G | 35.6 |
| | | TSS | 394 |
| | | pH | 9.1 |
| | | | |

First Amended 60-Day Notice of Intent to Sue
ReConserve of California
March 25, 2024
Page 19 of 30

| Sample Collection Date | Outfall | Parameter | Sample Analysis Result* |
|---|---|---|---|
| **Reporting Year 2021-22** | | | |
| 4/21/2022 | East Outfall | TSS | 180 |
| | | pH | 8.6 |
| | West Outfall | TSS | 121 |
| | | | |
| **Reporting Year 2022-23** | | | |
| 11/8/2022 | East Outfall | O&G | 23.3 |
| | | TSS | 259 |
| | | pH | 10.9 |
| | West Outfall | O&G | 24.7 |
| | | TSS | 457 |
| | | pH | 8.8 |
| 3/29/2023 | East Outfall | TSS | 620 |
| | | pH | 8.7 |
| | West Outfall | TSS | 1460 |
| 5/2/2023 | East Outfall | O&G | 22.4 |
| | | TSS | 423 |
| | | pH | 9.4 |
| | West Outfall | O&G | 22.4 |
| | | TSS | 437 |
| | | pH | 9.1 |
| | | | |
| **Reporting Year 2023-24** | | | |
| 12/20/2023 | East Outfall | pH | 10.3 |
| | West Outfall | pH | 9.9 |
| | | | |

*All units are listed in milligrams per liter (mg/L), except pH, which is listed in pH units (SU) and specific electrical conductivity which is listed in micromhos per centimeter

Listed below are the EPA Benchmark numeric action levels associated with the parameters, as identified on **Table 2 of the General Permit,** as well as the Maximum Contaminant Levels (MCLs) listed in the **California Code of Regulations, Title 22, Section 64431** (Table 64431-A) and the Water Quality Control Plan **(Basin Plan)** for the **California Regional Water Quality Control Board, Central Valley Regional, Fifth Edition** (Revised May 2018), Basin Plan Table 3-1, Trace Element Water Quality Objectives.

| Parameter | EPA Benchmark Annual NAL | EPA Benchmark NAL instantaneous Value | CV BASIN PLAN Table 3-1 MCL value | CCR Title 22 Section 64431 |
|---|---|---|---|---|
| pH | N/A | >6 or <9 SU | >6.5 or >8.5 | N/A |
| Total Suspended Solids (TSS) | 100 mg/L | 400 mg/L | N/A | N/A |
| Oil & Grease | 15 mg/L | 25 mg/L | N/A | N/A |
| Zinc | .26 mg/L | N/A | .10 mg/L | N/A |
| Copper | .0332 mg/L | N/A | .0056 mg/L | N/A |
| Lead | .262 mg/L | N/A | N/A | .05 mg/L |
| Chemical Oxygen Demand (COD) | 120 mg/L | N/A | N/A | N/A |
| Biochemical Oxygen Demand (BOD) | 30 mg/L | N/A | N/A | N/A |
| Aluminum | .75 mg/L | N/A | N/A | 1.0 mg/L |
| Iron | 1.0 mg/L | N/A | .30 mg/L | N/A |
| Nitrate + Nitrate Nitrogen | .68 mg/L | N/A | N/A | 45 mg/L |
| Phosphorus | 2.0 mg/L | N/A | N/A | N/A |
| Ammonia | 2.14 mg/L | N/A | N/A | N/A |
| Magnesium | .064 mg/L | N/A | N/A | N/A |
| Arsenic | .064 mg/L | N/A | N/A | N/A |
| Cadmium | .0053 mg/L | N/A | .00022 mg/L | .01 mg/L9i |
| Nickel | 1.02 mg/L | N/A | N/A | N/A |
| Mercury | .0014 mg/L | N/A | N/A | N/A |
| Selenium | .005 mg/L | N/A | N/A | N/A |
| Silver | .0183 mg/L | N/A | .01 mg/L | .05 mg/L |

### H.  *Failure to Comply with Exceedance Response Action Requirements*

As of July 1, 2015, the date the current General Permit became effective, all Dischargers were in "Baseline status" for all parameters listed in Table 2 of the Permit.   (General Permit, Section XII.B.

Level 1 ERA Evaluation and Report

Pursuant to Section XII.C of the General Permit, a Discharger's Baseline status for any given parameter changes to "Level 1 status" if sampling results indicate either an annual average or instantaneous NAL exceedance for that same parameter.

Level 1 status commences on July 1 following the Reporting Year during which the exceedance(s) occurred, and the Discharger enters the Exceedance Response Action ("ERA") process.  The ERA process requires the discharger to conduct a Level 1 ERA Evaluation, with the assistance of a Qualified Industrial Storm Water Practitioner ("QISP"), of the industrial pollutant sources at the Facility that are or may be related to the NAL exceedance(s), by October 1 following commencement of Level 1 status.

The Level 1 ERA Evaluation must include the identification of the corresponding BMPs in the SWPPP, as well as any additional BMPs and SWPPP revisions necessary to prevent future NAL exceedances and to comply with the requirements of the General Permit.

Based upon the Level 1 ERA Evaluation, the Discharger is required to, as soon as practicable, but no later than January 1 following commencement of Level 1 status, prepare a Level 1 ERA Report.  (Section XII.C.2).  The Level 1 Report must be prepared by a QISP and must include a summary of the Level 1 ERA Evaluation, a detailed description of the necessary SWPPP revisions, and any additional BMPs for each parameter that exceeded an NAL.

The SWPPP revisions and additional BMP development and implementation must also be completed by January 1.  The Level 1 status discharger is required to submit via SMARTs the Level 1 ERA Report certifying that the Level 1 ERA Evaluation has been conducted, and necessary SWPPP revisions and BMP implementation has been completed.  The certification also requires the QISP's identification number, name, and contact information (telephone number, e-mail address) no later than January 1 following commencement of Level 1 status.

A Discharger's Level 1 status for a parameter will return to Baseline status if a Level 1 ERA Report has been completed, all identified additional BMPs have been implemented, and results from four (4) consecutive qualified storm events that were sampled subsequent to BMP implementation indicate no additional NAL exceedances for that parameter.

Level 2 ERA Action Plan

A Discharger will enter Level 2 status if there is an NAL exceedance of the same parameter occurring during the time the Discharger is in Level 1 status.

By January 1 following the reporting year during which the NAL exceedance(s) occurred, Dischargers in Level 2 status must certify and submit via SMARTS a Level 2 ERA Action Plan prepared by a QISP that addresses each new Level 2 NAL exceedance.

For each new Level 2 exceedance, the Level 2 Action Plan must select one or more of three available "demonstrations" the Facility will perform to address the exceedance(s).  These demonstrations include (a) Industrial Activity BMPs; (b) Non-Industrial Pollutant Source

Demonstration; and (c) Natural Background Pollutant Source Demonstration, and are more fully described below under the Level 2 Technical Report provisions.

The Level 2 ERA Action Plan must address all drainage areas with corresponding Level 2 exceedances and must include a time schedule and detailed description of the specific tasks required to complete the selected demonstration(s).  Further, all elements of the Action Plan must be implemented as soon as possible and completed no later than one year following the submission of the Action Plan.

<u>Level 2 ERA Technical Report</u>

On January 1 of the reporting year following submittal of a Level 2 ERA Action Plan, Dischargers in Level 2 must certify and submit a Level 2 ERA Technical Report prepared by a QISP that includes the Facility's selection of either:

(a) *Industrial Activity BMP Demonstration* (whereby the Facility evaluates their implemented BMPs and additional BMPs identified in the Level 2 ERA Action Plan to determine whether implementation of the BMPs has achieved compliance with the effluent limitations of the General Permit and are expected to eliminate future NAL exceedances;

(b) *Non-Industrial Pollutant Source Demonstration* (whereby the Facility determines that its NAL exceedances are attributable solely to the presence of non-industrial pollutant sources); or

(c) *Natural Background Pollutant Source Demonstration* (whereby the Facility determines that its NAL exceedances are attributable solely to the presence of pollutants in the natural background that has not been disturbed by industrial activities).

**<u>Failure to Submit Level 1 ERA Reports</u>**

Based on the sample data summarized above, the Facility exceeded the EPA Benchmark NAL for TSS and was elevated to Level 1 Status on July 1, 2019, pursuant to Section XII.C – Exceedance Response Actions -- of the General Permit.

Pursuant to Section XII.C.2 of the General Permit, the Facility was required to have a QISP conduct an evaluation of the Facility by October 1, and to upload an adequate Level 1 ERA Report on or before January 1, 2020.

Based on the sample data summarized above, the Facility exceeded the EPA Benchmark NAL for O&G and was elevated to Level 1 Status on July 1, 2020, pursuant to Section XII.C – Exceedance Response Actions -- of the General Permit.

Pursuant to Section XII.C.2 of the General Permit, the Facility was required to have a QISP conduct an evaluation of the Facility by October 1, and to upload an adequate Level 1 ERA Report on or before January 1, 2021.

As of the date of this Notice, PEA alleges that ReConserve of California has failed to conduct an adequate Level 1 status evaluation and has also failed to submit these Level 1 ERA reports by uploading them into the SMARTS system.

### Failure to Submit Level 2 Action Plans

While in Level 1 status, the Facility again exceeded the EPA Benchmark NAL for TSS. These results elevated ReConserve of California to Level 2 Status on July 1, 2020, pursuant to Section XII.D of the General Permit.

Pursuant to Section XII.D.1 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 ERA Action Plan that addresses each new Level 2 NAL exceedance at the Facility on or before January 1, 2021.

While in Level 1 status, the Facility again exceeded the EPA Benchmark NAL for O&G. These results elevated ReConserve of California to Level 2 Status on July 1, 2021, pursuant to Section XII.D of the General Permit.

Pursuant to Section XII.D.1 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 ERA Action Plan that addresses each new Level 2 NAL exceedance at the Facility on or before January 1, 2022.

While in Level 1 status, the Facility again exceeded the EPA Benchmark NAL for pH. These results elevated ReConserve of California to Level 2 Status on July 1, 2023, pursuant to Section XII.D of the General Permit.

Pursuant to Section XII.D.1 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 ERA Action Plan that addresses each new Level 2 NAL exceedance at the Facility on or before January 1, 2024.

As of the date of this Notice, PEA alleges that ReConserve of California has failed to submit these Level 2 ERA Action Plans for the Facility by uploading them into the SMARTS system.

### Failure to Submit Level 2 Technical Reports

Pursuant to Section XII.D.2 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 Technical Report on or before January 1, 2022.

Pursuant to Section XII.D.2 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 Technical Report on or before January 1, 2023.

As of the date of this Notice, PEA alleges that ReConserve of California has failed to submit these Level 2 Technical Reports for the Facility by uploading them into the SMARTS system.

Furthermore, on April 14, 2023, the Regional Water Board issued a Notice of Violation (NOV) to ReConserve of California for failure to follow the Exceedance Response Action requirements of Section XII of the General Permit.

Every day that ReConserve of California operates at the Facility without complying with the required Exceedance Response Actions pursuant to the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

ReConserve of California has been in daily and continuous violation of the General Permit's ERA requirements every day since January 1, 2020. These violations are ongoing, and PEA will include additional violations when information becomes available.

## I. *Failure to Comply with the Mandates of the Regional Water Board*

Pursuant to Section XIX.B of the General Permit, Regional Water Boards have general authority to enforce the provisions and requirements of the General Permit, including reviewing SWPPPs, Monitoring Implementation Plans, ERA Reports, and Annual Reports and requiring Dischargers to revise and re-submit PRDs, conducting compliance inspections, and taking enforcement actions.

As fully discussed above, the Regional Water Quality Control Board issued ReConserve of California an official Notice of Violation on April 14, 2023, requiring that by May 15, 2023 the Facility:

1. Promptly clean all crushed limestone, food waste, and sediment that have the potential to discharge to the storm drain system.
2. Identify and eliminate all sources of debris, waste, spills, tracked materials, or leaked materials that can be mobilized by stormwater runoff.
3. Install and maintain appropriate BMPs to reduce or eliminate industrial pollutants from discharging offsite.
4. Clean oil spills on the outside of the 12,000-gallon diesel fuel tank and on the ground to ensure there is no stormwater exposure to spilled fuel.
5. Regularly sweep areas where sediment tracking and food waste spills have occurred to prevent off-site discharge of materials to the storm drains. If necessary, apply crushed rock or other suitable material to stabilize the Site and prevent sediment tracking.

6. Collect and analyze stormwater samples from four QSEs per reporting year as required by the Industrial General Permit.
7. Collect and record Sampling Event Visual Observations and Monthly Visual Observations as required by the Industrial General Permit.
8. Ensure that corrective actions are being recorded and addressed in Monthly Visual Observation Inspections for BMP deficiencies, food waste and crushed limestone spills, tracking issues, evidence of sediment discharging to the storm drains, and any BMP deficiencies or housekeeping issues that may arise.
9. Update the SWPPP and Site Map to include all required elements identified in the Industrial General Permit section X.A. and X.E. After the SWPPP has been updated, the Discharger is responsible for training the Pollution Prevention Team on the newly updated SWPPP and maintaining a copy of the updated SWPPP onsite.
10. Training should be conducted by a Qualified Industrial Stormwater Practitioner (QISP) or a Trainer of Record (ToR). The Pollution Prevention Team should be trained to accurately identify and document visual observations and understand sampling requirements.
11. If any BMPs will take longer than 30 days to implement, please provide a schedule for implementation and upload monthly updates into SMARTS.

Additional requirements in the NOV are as follows:  In order to demonstrate compliance with the Industrial General Permit, please submit the following documents to your SMARTS account by 15 May 2023:

1. Photos demonstrating that all crushed limestone, food waste, sediment, and trash throughout the Facility have been cleaned.
2. Photos demonstrating that oil spills on the 12,000-gallon diesel fuel tank have been cleaned.
3. Photos demonstrating oil absorbing BMPs have been installed around the 12,000-gallon diesel fuel tank.
4. Photos demonstrating containment BMPs have been installed around the crushed limestone silo.
5. Submit a copy of the Monthly Visual Observation record for April 2023 and copies of visual observations for the next three months (May, June, and July). If stormwater sampling is conducted, also submit Sampling Event Visual Observations.
6. Submit outstanding AD Hoc sample reports.
7. Submit updated SWPPP and Site Map.
8. Submit training records.

ReConserve of California has failed to comply with those mandates as of the date of this Notice.

### J.   *Failure to Comply with Facility SWPPP*

The Facility's SWPPP indicates that the Facility will collect and analyze storm water samples from two qualified storm events within the first half of each reporting year (July 1 to December 31) and two QSEs within the second half of each reporting year (January 1 to June 30).

As detailed above, the Facility missed collecting storm water samples in the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023.

The Facility's Site Map, attached to the Facility's current SWPPP, identifies 3 discharge locations from which storm water run-off samples are to be collected:  D1, D2 and unlisted driveway discharge.

As specified above, ReConserve of California failed to collect storm water samples from all outfalls as its Facility, in violation of its current SWPPP.

The Monitoring Implementation Section of the Facility's SWPPP identifies the parameters for which the Facility's storm water run-off samples must be analyzed, including pH, oil & grease, Total Suspended Solids, .

As specified above, the storm water run-off samples the facility analyzed and uploaded into the SMARTS system for samples collected during reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 failed to include sample analyses for the required parameter of **pH**.  Furthermore, Section X.H.g of the General Permit requires all Dischargers to develop and implement management procedures to ensure that appropriate staff implements all elements of the Facility's SWPPP, including the Monitoring Implementation Plan.

### K.   *Failure to Properly Train Employees/Facility Pollution Prevention Team*

Section X.D.1 of the General Permit requires each Facility to establish a Pollution Prevention Team responsible for assisting with the implementation of the requirements of the General Permit. The Facility is also required to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned Pollution Prevention Team members are temporarily unavailable (due to vacation, illness, out of town business, or other absences).

Section X.H.f of the General Permit also requires that each Facility ensure that all Pollution Prevention Team members implementing the various compliance activities of the General Permit are properly trained in at least the following minimum requirements: BMP implementation, BMP effectiveness evaluations, visual observations, and monitoring activities.   Further, if a Facility enters Level 1 status, appropriate team members must be trained by a QISP.

Based on the foregoing violations, it is clear that ReConserve of California has either not properly established its Pollution Prevention Team, or has not adequately trained its Pollution Prevention Team, in violation of Sections X.D.1 and X.H.f of the General Permit.

ReConserve of California may have had other violations that can only be fully identified and documented once discovery and investigation have been completed.  Hence, to the extent possible, PEA includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

## IV.     THE PERSON OR PERSONS RESPONSIBLE FOR THE VIOLATIONS

The individuals and entities responsible for the alleged violations are ReConserve of California – Stockton, Inc., ReConserve, Inc. as well as the respective corporate officers and employees of the Facility responsible for compliance with the CWA.

## V.     THE DATE, DATES, OR REASONABLE RANGE OF DATES OF THE VIOLATIONS

The range of dates covered by this 60-day Notice is March 10 2019, to the date of this Notice.  PEA may from time to time update this Notice to include all violations which may occur after the range of dates covered by this Notice.  Some of the violations are continuous in nature; therefore, each day constitutes a violation.

## VI.     CONTACT INFORMATION

The entity giving this 60-day Notice is Pacific Environmental Advocates, LLC ("PEA").

Darcie Barnes
PACIFIC ENVIRONMENTAL ADVOCATES, LLC
1275 4th Street #4096
Santa Rosa, CA  95404
Telephone: 707-536-1874
Email: solutions@pacificenvironmentaladvocates.com

To ensure proper response to this Notice, all communications should be addressed to PEA's Counsel, Mr. Xhavin Sinha.

Xhavin Sinha
Sinha Law
3901 Lick Mill Boulevard, Suite 356
Santa Clara, CA 95054
Telephone: (408) 791-0432
Email: xsinha@sinha-law.com

**To ensure proper response to this Notice, all communications should be addressed
to PEA's legal counsel, Mr. Xhavin Sinha.**

## VII.     RELIEF SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for un-permitted discharges of pollutants.  33 U.S.C. §§ 1365(a)(1) and (f), §1362(5).

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five (5) years prior to the date of the Notice Letter.  **These provisions of law currently authorize civil penalties of $56,460.00 per day, for each violation occurring on or after November 2, 2015.**

In addition to civil penalties, PEA will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law.

Lastly, pursuant to 33 U.S.C. § 1365(d), PEA will seek to recover its pre and post-litigation costs, including all attorneys' and experts' fees and costs incurred in this matter.

## VIII.     CONCLUSION

The CWA specifically provides a 60-day notice period to promote resolution of disputes. PEA encourages ReConserve of California's counsel to contact PEA within 20 days of receipt of this Notice by sending an email to xsinha@sinha-law.com to initiate a discussion regarding the violations detailed herein and to determine how ReConserve of California may resolve this matter without the necessity of litigation.

During the 60-day notice period, PEA is willing to discuss effective remedies for the violations; however, if ReConserve of California wishes to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated soon so that they may be completed before the end of the 60-day notice period.

If PEA does not receive a response from ReConserve of California or its counsel before the expiration of the 60-day notice period, this matter will be transferred to PEA's litigation counsel.  Thank you.

Sincerely,

Darcie Barnes
PACIFIC ENVIRONMENTAL ADVOCATES, LLC

Attachment 1. Annual Reports

Copies to:

Michael S. Regan, Director, U.S. Environmental Protection Agency:
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
Email: regan.michael@epa.gov

Martha Guzman Aceves, Regional Administrator, U.S. EPA – Region 9:
Sarah Martinez
75 Hawthorne Street
San Francisco, CA, 94105
Email: martinez.sarah@epa.gov

Laurie Kermish Manager, Water Law Section, Office of Regional Counsel
Email: kermish.laurie@epa.gov

Eric Oppenheimer, Executive Director
State Water Resources Control Board:
P.O. Box 100
Sacramento, CA 95812-0100
Email: eric.oppenheimer@waterboards.ca.gov

Eileen White, Executive Officer for the Water Board SF Bay Region
SF Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612
Email: eileen.white@waterboards.ca.gov

Mayumi Okamoto, State Water Board Office of Enforcement
Email: Mayumi.Okamoto@waterboards.ca.gov

California Water Boards Stormwater Program, stormwater@waterboards.ca.gov

# ATTACHMENT 1
# ANNUAL REPORTS

State of California
STATE WATER RESOURCES CONTROL BOARD



2018-2019
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2018 through June 30, 2019

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                                WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City:  Stockton                         Contact Person:  Ron Alexander

State:  CA                              Phone:  209-982-5085

Zip:  95206                             Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                         Contact Person:  Ron  Alexander

State:  CA                              Phone:  209-982-5085

Zip:  95206                             Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                         Contact Person:  Ron Alexander

State:  CA                              Phone:  209-982-5085  Ext: 25085

Zip:  95206                             Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2018-2019
Annual Report for WDID 5S39I017506



## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes      ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes      ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☐ Yes      ☒ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

 2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes      ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes      ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes      ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER





2018-2019
Annual Report for WDID 5S39I017506

7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes        ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes        ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes        ☐ No

If Yes, what date was the annual evaluation conducted?    02/04/2019

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2018-2019
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                                    Date:  07/10/2019

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

 RECYCLED PAPER

2018-2019

**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|
| Question 3 | there were no qualifying events during the first quarter of this period |

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|

2018-2019

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | Yes |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | Yes |
| E.Coli and Enterococcus | Pathogens | Yes |
| Metals Screen | Mercury | Yes |
| Specific Conductivity | Electrical Conductivity | Yes |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
STATE WATER RESOURCES CONTROL BOARD



2019-2020
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2019 through June 30, 2020

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at: http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                                    WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address:  704 Zephyr St

City:  Stockton                              Contact Person:  Ron Alexander

State:  CA                                    Phone:  209-982-5085

Zip:  95206                                   Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                              Contact Person:  Ron  Alexander

State:  CA                                    Phone:  209-982-5085

Zip:  95206                                   Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                              Contact Person:  Ron Alexander

State:  CA                                    Phone:  209-982-5085  Ext: 25085

Zip:  95206                                   Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2019-2020
Annual Report for WDID 5S39I017506



## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes          ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes          ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes          ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♻ RECYCLED PAPER



2019-2020
Annual Report for WDID 5S39I017506



7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes      ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes      ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes      ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes      ☐ No

If Yes, what date was the annual evaluation conducted?    03/04/2020

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♻ RECYCLED PAPER



2019-2020
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

# ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                          Date:  06/22/2020

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

 RECYCLED PAPER

2019-2020
**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| Supporting Documentation | Storm water sample 7/3/2019 | storm water sample 2 | 06/22/2020 | null/null | b876991629fc5bc375b b3fbe2adba542e8956d 21756c148b1ccf4d211 c7e2e |
| Supporting Documentation | storm water sample 12/31/2019 | storm water sample 1 | 06/22/2020 | null/null | b76f71f2238d1235dc6 191293708295a187e1 bb1953a358ebcc41f5f b34ddf |

2019-2020
**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | Yes |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | Yes |
| E.Coli and Enterococcus | Pathogens | Yes |
| Metals Screen | Mercury | Yes |
| Specific Conductivity | Electrical Conductivity | Yes |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
### STATE WATER RESOURCES CONTROL BOARD



---

2020-2021
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2020 through June 30, 2021

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                             WDID: 5S39I017506

Business Name: ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City: Stockton                          Contact Person: Ron Alexander

State: CA                                Phone: 209-982-5085

Zip: 95206                               Email: ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes: 2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name: ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City: Stockton                          Contact Person: Ron  Alexander

State: CA                                Phone: 209-982-5085

Zip: 95206                               Email: ralexander@reconserve.com

**C. Facility Billing Information**

Business Name: ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City: Stockton                          Contact Person: Ron Alexander

State: CA                                Phone: 209-982-5085  Ext: 25085

Zip: 95206                               Email: ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2020-2021
Annual Report for WDID 5S39I017506



## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

 2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes        ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes        ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes        ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



**2020-2021**
**Annual Report for WDID 5S39I017506**



7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

 See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes      ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes      ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes      ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes      ☐ No

If Yes, what date was the annual evaluation conducted?    12/21/2020

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♺ RECYCLED PAPER



2020-2021
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                              Date:  07/13/2021

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

2020-2021

**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| Supporting Documentation | Reconserve Lab results | storm water test results | 07/13/2021 | null/null | fc9a8b9d796a14e78bb8cad15fbf866c83a2485f5f90ddc8b58c7eb54bf7f |

2020-2021

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | Yes |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | Yes |
| E.Coli and Enterococcus | Pathogens | Yes |
| Metals Screen | Mercury | Yes |
| Specific Conductivity | Electrical Conductivity | Yes |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
STATE WATER RESOURCES CONTROL BOARD

GAVIN NEWSOM
GOVERNOR

JARED BLUMENFELD
SECRETARY FOR
ENVIRONMENTAL PROTECTION

2021-2022
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2021 through June 30, 2022

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                          WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address:  704 Zephyr St

City:  Stockton                          Contact Person:  Ron Alexander

State:  CA                               Phone:  209-982-5085

Zip:  95206                              Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:    704 Zephyr St

City:  Stockton                          Contact Person:  Ron  Alexander

State:  CA                               Phone:  209-982-5085

Zip:  95206                              Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:    704 Zephyr St

City:  Stockton                          Contact Person:  Ron Alexander

State:  CA                               Phone:  209-982-5085  Ext: 25085

Zip:  95206                              Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543


RECYCLED PAPER



2021-2022
Annual Report for WDID 5S39I017506



GAVIN NEWSOM
GOVERNOR

JARED BLUMENFELD
SECRETARY FOR
ENVIRONMENTAL PROTECTION

## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☐ Yes          ☒ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

 2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes          ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes          ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes          ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER





2021-2022
Annual Report for WDID 5S39I017506

7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes          ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes          ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes          ☐ No

If Yes, what date was the annual evaluation conducted?    04/21/2022

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

2021-2022
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                              Date:  10/10/2022

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

2021-2022

**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|
| Question 3 | not a significant amount of rainfall to meet required levels for testing. |

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| Other | Reconserve Stktn-SP_2206637-20220519 | | 10/10/2022 | null/null | 28a6961481b98a2830 59b55627646b6fec581 2eda7dffa5b684816e3 b1e5dd0 |

2021-2022
**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | No |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | No |
| E.Coli and Enterococcus | Pathogens | No |
| Metals Screen | Mercury | No |
| Specific Conductivity | Electrical Conductivity | No |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
STATE WATER RESOURCES CONTROL BOARD



GAVIN NEWSOM
GOVERNOR

YANA GARCIA
SECRETARY FOR
ENVIRONMENTAL PROTECTION

2022-2023
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2022 through June 30, 2023

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                                        WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City:  Stockton                           Contact Person:  Ron Alexander

State:  CA                                Phone:  209-982-5085

Zip:  95206                               Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:    704 Zephyr St

City:  Stockton                           Contact Person:  Ron  Alexander

State:  CA                                Phone:  209-982-5085

Zip:  95206                               Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:    704 Zephyr St

City:  Stockton                           Contact Person:  Ron Alexander

State:  CA                                Phone:  209-982-5085  Ext: 25085

Zip:  95206                               Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2022-2023
Annual Report for WDID 5S39I017506



GAVIN NEWSOM
GOVERNOR

YANA GARCIA
SECRETARY FOR
ENVIRONMENTAL PROTECTION

## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes        ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes        ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes        ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2022-2023
Annual Report for WDID 5S39I017506



7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

 See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes      ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes      ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes      ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes      ☐ No

If Yes, what date was the annual evaluation conducted?    11/08/2022

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2022-2023
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

13. Did additional NAL exceedances occur in the same drainage area for the facility's Level 2 parameter(s) (if no Level 2 parameters, select No)?

☐ Yes        ☒ No

14. Was the Level 2 ERA Technical Report updated (if no Level 2 parameters, select No)?

☐ Yes        ☒ No

If No, explain:

    was not aware of update needed

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:    Ron Alexander

Title:    General Manager                                      Date:    06/15/2023

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♲ RECYCLED PAPER

2022-2023
**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|

2022-2023

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | No |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | No |
| E.Coli and Enterococcus | Pathogens | No |
| Metals Screen | Mercury | No |
| Specific Conductivity | Electrical Conductivity | No |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |



March 8, 2024

<u>Via US Mail, Certified and Email</u>

Ron Alexander
Facility Manager
ReConserve of California – Stockton, Inc.
704 Zephyr Street
Stockton, CA 95206
Email:  ralexander@reconserve.com

<u>Via US Mail</u>

C T Corporation System
Agent for ReConserve, Inc.
330 North Brand Boulevard
Glendale, CA  91203

Meyer Luskin
Chief Executive Officer
ReConserve, Inc.
2811 Wilshire Boulevard, Suite 410
Santa Monica, CA  90403

Keith Rudd
Vice President of Environmental Health and Safety
ReConserve, Inc.
2811 Wilshire Boulevard, Suite 410
Santa Monica, CA  90403
Email:  krudd@reconserve.com

**Re:     60-Day Notice of Violations and Intent to File Suit Under the Federal Water
         Pollution Control Act ("Clean Water Act")**

To Officers, Directors, Operators, Property Owners and/or Facility Managers of ReConserve of
California Stockton Inc:

---

1275 4th Street #4096              Telephone:  (707) 536-1874
Santa Rosa, CA  95404             Email:  solutions@pacificenvironmentaladvocates.com

This letter is being sent to you on behalf of Pacific Environmental Advocates, LLC ("PEA") to give legal notice that PEA intends to file a civil action against ReConserve Of California - Stockton, Inc., ReConserve, Inc. ("Discharger" or "ReConserve of California") and the respective corporate officers and other legally responsible parties for violations of the Federal Clean Water Act ("CWA" or "Act") 33 U.S.C. § 1251 *et seq.,* that PEA believes are occurring at the ReConserve of California facility located at 704 Zephyr Street in Stockton, California ("the Facility" or "the site").

PEA is an environmental citizen's group established under the laws of the State of California to protect, enhance, and assist in the restoration of all rivers, creeks, streams, sloughs, lakes and tributaries of California, for the benefit of its ecosystems and communities.

As discussed below, the Facility's discharges of pollutants degrade water quality and harm aquatic life in the Facility's Receiving Waters, which are waters of the United States and are described in Section II.B, below. PEA has members throughout California. Some of PEA's members live, work, and/or recreate near the Receiving Waters and use and enjoy the Receiving Waters for kayaking, canoeing, camping, fishing, duck hunting, boating, swimming, hiking, cycling, bird watching, picnicking, viewing wildlife, and/or engaging in scientific study.

At least one of PEA's current members has standing to bring suit against ReConserve of California, as the unlawful discharge of pollutants from the Facility as alleged herein has had an adverse effect particular to him or her and has resulted in actual harm to the specific PEA member(s).

Further, the Facility's discharges of polluted storm water and non-storm water are ongoing and continuous. As a result, the interests of certain individual PEA members have been, are being, and will continue to be adversely affected by the failure of ReConserve of California to comply with the General Permit and the Clean Water Act.

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of intent to file suit. 33 U.S.C. § 1365(b). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the EPA in the state in which the violations occurred or are occurring.

As required by CWA section 505(b), this Notice of Violation and Intent to File Suit provides notice to the Discharger of the violations which have occurred and continue to occur at the Facility. After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, PEA reserves the right to file suit in federal court against ReConserve of California under CWA section 505(a) for the violations described more fully below, if this matter cannot be resolved.

## I.     THE SPECIFIC STANDARD, LIMITATION OR ORDER VIOLATED

PEA's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the General Industrial Storm Water Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board ("SWRCB")] Water Quality Order No. 2014-0057-DWQ as amended by Orders 2015-0122-DWQ and 2018-XXXX-DWQ) (hereinafter "General Permit").

Information available to PEA, including documents obtained from California EPA's online Storm Water Multiple Application and Reporting Tracking System ("SMARTS"), indicates that on or around September 25, 2022, ReConserve of California submitted a Notice of Intent ("NOI") to be authorized to discharge storm water from the Facility under the General Permit. ReConserve of California's assigned Waste Discharger Identification number ("WDID") is 5S39I017506.

As more fully described in Section III, below, PEA alleges that in its operations of the Facility, ReConserve of California has committed ongoing violations of the substantive and procedural requirements of the Federal Clean Water Act, California Water Code §13377, et seq; the General Permit; the Regional Water Board Basin Plan; the California Toxics Rule (CTR); 40 C.F.R. Chapter I, Subchapter N, § 400, et seq.; and California Code of Regulations, Title 22, § 64431.

## II.    THE LOCATION OF THE ALLEGED VIOLATIONS

### A.   The Facility

The location of the point sources from which the pollutants identified in this Notice are discharged in violation of the CWA is ReConserve of California's permanent facility address of 704 Zephyr Street in Stockton, California.

ReConserve of California is a facility that recycles food by-products for livestock feed. Facility operations are covered under Standard Industrial Classification Codes (SIC) 2048 - Prepare feeds and animal slaughtering.

Based on the EPA's Industrial Storm Water Fact Sheet for industrial businesses with the SIC code of 2048, stormwater run-off discharges contain many pollutants on the list of chemicals published by the State of California known to cause cancer, birth defects, and/or developmental or reproductive harm, including toxic and heavy metals, pH affecting substances, total suspended solids (TSS), and various types of oil and grease (O&G), as well as  and iron, aluminum, chemical oxygen demand (COD), e.coli, zinc, nitrates and nitrites (N+N), biological oxygen demand (BOD), and specific/electrical conductivity (EC).

Information available to PEA indicates that the Facility's industrial activities and associated materials are exposed to storm water, and that each of the substances listed on the EPA's Industrial Storm Water Fact Sheet is a potential source of pollutants at the Facility.

### B.  The Affected Receiving Waters

The Facility discharges into City of Stockton Municipal Separate Storm Sewer System (MS4) which discharges to the City of Stockton retention pond.  The pond then discharges to Duck Creek, which flows into Walker Slough and then onto French Camp Slough, which is a tributary to the San Joaquin River ("Receiving Waters"). Duck Creek, Walker Slough, French Camp Slough and the San Joaquin River are impaired for Chlorpyrifos, Diazinon, Dissolved Oxygen, E Coli and Enterococcus, Carcinogenic Pesticide Screen, Mercury, and Total DDT (including DDD, DDE and DDT).

The San Joaquin River is a water of the United States.  The CWA requires that water bodies such as the San Joaquin River meet water quality objectives that protect specific "beneficial uses." The Regional Water Board has issued its *Water Quality Control Plan for the Sacramento-San Joaquin Delta Basin* ("Basin Plan") to delineate those water quality objectives.

The Basin Plan identifies the "Beneficial Uses" of water bodies in the region.   The Beneficial Uses for the Receiving Waters downstream of the Facility include: Municipal and Domestic Supply (MUN), Agricultural Supply (AGR), Industrial Process Supply (PRO), Industrial Service Supply (IND), Navigation (NAV), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM), Cold Freshwater Habitat (COLD), Wildlife Habitat (WILD), Migration (MIGR), and Spawning, Reproduction, and/or Early Development (SPWN).

A water body is impaired pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), when its Beneficial Uses are not being achieved due to the presence of one or more pollutants.   Polluted storm water and non-storm water discharges from industrial facilities, such as the Facility, contribute to the further degradation of already impaired surface waters, and harm aquatic dependent wildlife.

### III.    VIOLATIONS OF THE CLEAN WATER ACT AND GENERAL PERMIT

#### A.  Deficient SWPPP and Site Map

ReConserve of California's current Storm Water Pollution Prevention Plan ("SWPPP") and Site Map for the Facility are inadequate and fail to comply with the requirements of the General Permit as specified in Section X of Order No. 2014-0057-DWQ, as delineated below.

1.    The Site Map does not include the minimum required components for Site Maps as indicated in Section X.E of the General Permit:

(a)   sampling points which are representative of facility operations; and

(b)   sample locations if different than the identified discharge locations.

2.      The SWPPP does not include all the required elements, as indicated below:

(a)   The facility's **scheduled operating hours**, including irregular operating hours (i.e. temporary, intermittent, seasonal, weather dependent) (Section X.D.2.d);

(b)   An appropriate discussion of the **Industrial Materials** handled at the facility, including the locations where the materials are stored, received, shipped and handled, and the quantities and handling frequency of the Industrial Materials (Sections X.A.3, X.F, X.G.1.a);

(c)   A detailed, accurate and complete discussion of **Facility operations and all industrial processes** at the Facility, including manufacturing, cleaning, maintenance, recycling, disposal, and any other activities related to each industrial process; and the type,  characteristics, and approximate quantity of industrial materials used in or resulting from the process. Areas protected by containment structures and the corresponding containment capacity are also required to be identified and described. (X.G.1.a);

(d)   An accurate and complete description of **Potential Pollutant Sources** and narrative assessment of all areas of industrial activity with potential industrial pollutant sources, including Industrial Processes, Material Handling and Storage Areas, Dust and Particulate Generating Activities, Significant Spills and Leaks, Non-Storm Water Discharges and Erodible Surfaces (Section X.G);

(e)   Adequate mandatory **Minimum Best Management Practices** (BMPs), including Good Housekeeping, Preventive Maintenance, Spill and Leak Prevention and Response, Material Handling and Waste Management, Erosion and Sediment Controls, Employee Training Program and Quality Assurance and Record Keeping (Section X.H.1);

(f)   Adequate **Advanced BMP**s required to comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the General Permit to reduce or prevent discharges of pollutants in the Facility's storm water discharge in a manner that reflects best industry practice, considering technological availability and economic practicability and achievability, including Exposure Minimization BMPs, Storm Water Containment and Discharge Reduction BMPs or Treatment Control BMPs

(Section X.H.2);

(g)   A **BMP Summary Table** summarizing each identified area of industrial activity, the associated industrial pollutant sources, the industrial pollutants and the BMPs being implemented (Section X.H.4 and X.H.5);

(h)   An appropriate **Monitoring Implementation Plan**, including **an identification of team members assigned to conduct monitoring requirements**, a detailed and accurate description of all discharge locations, a discussion of Visual Observation procedures, justifications for alternative discharge locations, if any, procedures for field instrument calibration instructions, and an example Chain of Custody form to be used when handling and shipping water quality samples to the lab (Section X.I);

(i)   An adequate and accurate discussion of the **Facility's Receiving Waters.** (Section XI.B.6.e, Section X.G.2.ix);

(j)   An adequate pollutant source assessment and the corresponding proper **sampling parameters** to include all potential pollutants present at the facility likely to come into contact with stormwater (Section XI.B.6).

PEA's investigation confirms that iron, aluminum, zinc, COD, BOD, e.coli, N+N and EC are present in industrial operations at the Facility.  The SWPPP fails to include these pollutants as **additional sampling parameters**, in violation of Section XI.B.6.c of the General Permit.

(k)   An appropriate and complete discussion of **drainage areas and Outfalls** from which samples must be taken during Qualified Storm Events (Section XI);

(l)   A discussion of whether the Facility is subject to 40 CFR Subchapter N ELGs, or incorrectly states that the Facility is not subject to the ELGs;

Failure to develop or implement an adequate SWPPP is a violation of Sections II.B.4.f and X of the General Permit.

###   B.   _Failure to Update SWPPP_

As discussed in herein, the Facility was inspected on March 29, 2023, by Regional Water Board inspector Lowell Cottle.  During that inspection, the inspector noted that the Facility's SWPPP was deficient and requested that an amended SWPPP be prepared and uploaded to the SMARTS database.

A Notice of Violation issued shortly thereafter as a result of the inspection indicated that the Facility SWPPP must be updated to comply with Section X of the General Permit.

As of the date of this Notice, ReConserve of California has failed to upload an adequate SWPPP pursuant to the mandates of the Regional Water Board and the General Permit.

As discussed above, the Facility entered Level 1 Status on July 1, 2019. The Level 1 ERA Report prepared by the QISP Micheline Kipf on January 31, 2024 indicated a number of recommended BMP additions and modifications that, pursuant to Section XII(C)(2)(a) of the General Permit, required the Facility to update its SWPPP no later than January 1 following the Facility's entry into Level 1 Status.

As of the date of this Notice, ReConserve of California has failed to upload an amended SWPPP pursuant to Sections X.B and XII.C.2.a of the General Permit.

Section X.B of the General Permit provides that all Facilities must revise their on-site SWPPP whenever necessary. Furthermore, all Dischargers are to upload to SMARTS a revised SWPPP within thirty (30) days whenever the SWPPP contains significant revisions; and within ninety (90) days when the SWPPP contains routine revisions.

ReConserve of California was required to update its SWPPP and upload it to SMARTS no later than January 1, 2020, but failed to do so.

### C. Failure to Develop, Implement and/or Revise an Adequate Monitoring and Reporting Program Pursuant to the General Permit

Section XI of the General Permit requires Dischargers to develop and implement a storm water monitoring and reporting program ("M&RP") prior to conducting industrial activities. Dischargers have an ongoing obligation to revise the M&RP as necessary to ensure compliance with the General Permit.

The objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge, and to ensure compliance with the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. An adequate M&RP ensures that BMPs are effectively reducing and/or eliminating pollutants at the Facility, and it must be evaluated and revised whenever appropriate to ensure compliance with the General Permit.

1. Failure to Conduct Visual Observations and Maintain Required Records/Reports

Section XI.A of the General Permit requires all Dischargers to conduct visual observations at least once each month, and sampling observations at the same time sampling occurs at a discharge location.

Section XI.A.3 required all Dischargers to complete contemporaneous records of all visual observations. The records at a minimum must include the date, approximate time of the

observation, the locations observed, the presence and probable source of any observed pollutants, the name of the person who conducted the observation, and any response actions and/or additional SWPPP revisions necessary to be taken in response to the visual observations.

Section XXI.H provides that Dischargers must produce copies of visual observation records to regulatory agencies upon request; and Section XXI.J.5 provides that Dischargers must retain either paper or electronic copies of visual observation records for at least five (5) years.

PEA believes that between March 10, 2019 and the present, ReConserve of California has failed to conduct monthly and sampling visual observations pursuant to Section XI.A of the General Permit and to maintain contemporaneous written Visual Observation Reports confirming that visual observations were conducted.

2. <u>Failure to Collect and Analyze the Required Number of Storm Water Samples</u>

In addition, PEA alleges that ReConserve of California has failed to provide the Regional Water Board with the minimum number of annual documented results of Facility run-off sampling as required under Sections XI.B.2 and XI.B.11.a of Order No. 2014-0057-DWQ, in violation of the General Permit and the CWA.

Section XI.B.2 of the General Permit requires that all Dischargers collect and analyze storm water samples from two Qualifying Storm Events ("QSEs") within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30).

Section XI.C.6.b provides that if samples are not collected pursuant to the General Permit, a proper and accurate explanation must be included in the Annual Report.

As of the date of this Notice, ReConserve of California has failed to upload into the SMARTS database system the required number of storm water run-off sample analyses for the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 and has not provided an adequate explanation for its failure to do so.

3. <u>Failure to Collect Storm Water Run-Off Samples during Qualified Storm Events</u>

Pursuant to Section XI.B.1 of the General Permit, a Qualified Storm Event (QSE) is a precipitation event that both produces a discharge for at least one drainage area at the Facility and is also preceded by 48 hours with no discharge from any drainage area.

The General Permit defines "drainage area" as the "area of land that drains water, sediment, pollutants, and dissolved materials to a common discharge location."   (Attachment C to General Permit-Glossary)

ReConserve of California's stormwater runoff samples collected as listed below were not collected during Qualified Storm Events as defined by the General Permit:

| Sample Date | QSE Info |
|---|---|
| 4/25/2016 | Not a valid QSE – 3rd consecutive day of rainfall |
| 10/27/2016 | Not a valid QSE – 3rd consecutive day of rainfall |
| 1/16/2019 | Not a valid QSE – 3rd consecutive day of rainfall |
| 5/16/2019 | Not a valid QSE – 3rd consecutive day of rainfall |
| 12/2/2019 | Not a valid QSE – 3rd consecutive day of rainfall |
| 11/8/2022 | Not a valid QSE – 3rd consecutive day of rainfall |

4.  Failure to Upload Storm Water Sample Analyses within 30 Days

Section XI.B.11.a of the General Permit requires Dischargers to submit all sampling and analytical results for all individual or Qualified Combined Samples via SMARTS within 30 days of obtaining all results for each sampling event.

ReConserve of California failed to upload into SMARTS within 30 days the following sampling and analytical results pursuant to Section XI.B.11.a of the General Permit:

| Sample Date | Lab Report Receipt Date | Date Uploaded into SMARTS |
|---|---|---|
| 1/16/2019 | 2/1/2019 | 5/16/2019 |
| 12/2/2019 | 12/31/2019 | 6/22/2020 |
| 1/22/2021 | 2/8/2021 | 7/13/2021 |
| 11/8/2022 | 12/2/2022 | 6/15/2023 |
| 3/29/2023 | 4/21/2023 | 6/13/2023 |

5.  Failure to Collect Samples From Each Drainage Area at all Discharge Locations

Section XI.B.4 of the General Permit requires Dischargers to collect samples from all discharge locations, regardless of whether the discharges are substantially similar. Dischargers may analyze a combined sample consisting of equal volumes, collected from as many as four substantially similar discharge locations, provided that the Discharger submits a Representative Sampling Reduction Justification form with its sample analysis, and the samples are combined in the lab in accordance with Section XI.C.5 of the General Permit. Furthermore, Representative sampling is only allowed for sheet flow discharges or discharges from drainage areas with multiple discharge locations.

According to ReConserve of California's current SWPPP, the Facility has 3 discharge locations, listed as D1, D2 and unlisted (driveway discharge). The storm water runoff sample analyses ReConserve of California uploaded for samples collected on the dates listed below failed to include samples from Outfall: unlisted (driveway discharge).

| | |
|---|---|
| 12/3/2015 | 12/2/2019 |
| 3/4/2016 | 1/22/2021 |
| 4/25/2016 | 4/21/2022 |
| 10/27/2016 | 11/8/2022 |
| 2/26/2018 | 3/29/2023 |
| 1/16/2019 | 5/2/2023 |
| 5/16/2019 | 12/20/2023 |

Furthermore, the Facility did not submit a Representative Sampling Reduction Justification form with any of its sample analyses.

6.   Failure to Analyze Storm Water Samples for the Correct Parameters

General Permit sections XI.B.6.a and XI.B.6.b require all Dischargers to analyze for the following three parameters, regardless of facility type:  pH, Total Suspended Solids (TSS) and Oil & Grease (O&G).

Section XI.B.6.c of the General Permit requires Dischargers to analyze for any additional parameters identified by the Discharger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment contained in the Facility's SWPPP.

PEA's investigation confirms that the following additional parameters are to be included in the sampling process, as they are associated with the Facility's industrial operations:  **iron** (boneyard), **aluminum** (boneyard), **COD** (biological wastes), **e.coli** (food waste), **zinc** (truck traffic), **N+N** (waste grains), **BOD** (various wastes), and **EC** (food salts and limestone).

Section XI.B.6.e of the General Permit requires Dischargers to analyze for any additional applicable industrial parameters related to receiving waters with 303(d) listed impairments or approved TMDLs based on the assessment in Section X.G.2.a.ix. Test methods with lower detection limits may be necessary when discharging to receiving waters with 303(d) listed impairments or TMDLs.

The storm water runoff sample analyses ReConserve of California uploaded for samples collected on the dates listed below failed to include additional sampling parameters as outlined above.

| | |
|---|---|
| 12/3/2015 | 12/2/2019 |
| 3/4/2016 | 1/22/2021 |
| 4/25/2016 | 4/21/2022 |
| 10/27/2016 | 11/8/2022 |
| 2/26/2018 | 3/29/2023 |
| 1/16/2019 | 5/2/2023 |
| 5/16/2019 | 12/20/2023 |

### D.  Inaccurate and Deficient Annual Reports Submitted to the Water Board

Section XXI.L of the General Permit provides as follows:

### L. Certification

Any person signing, certifying, and submitting documents under Section XXI.K above shall make the following certification:

*"I certify under penalty of law that this document and all Attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system or those persons directly responsible for gathering the information, to the best of my knowledge and belief, the information submitted is, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."*

ReConserve of California has failed to comply with Sections XVI.A and XXI.L of the General Permit by failing to submit complete and accurate Annual Reports to the Regional Water Board for the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023.

The Annual Reports included Attachment 1 as an explanation for why ReConserve of California failed to collect and analyze stormwater run-off during the required number of Qualifying Storm Events during the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 for all discharge locations, in accordance with Section XI.B.

Ron Alexander certified in the Reports, under penalty of perjury, that the required number of stormwater samples were not collected by the Facility because [allegedly] there were insufficient qualifying storm water discharges during the reporting years and scheduled facility operating hours.

However, records from the National Oceanic and Atmospheric Administration (NOAA) website/database confirm that during the reporting years in question there were in fact sufficient Qualified Storm Events (QSEs) occurring near the Facility during or within 12 hours of the start of regular business hours to allow ReConserve of California to have collected the requisite number of samples.

Specifically, ReConserve of California's Annual Reports submitted to the Regional Water Board through the SMARTS system on July 10, 2019, June 22, 2020, July 13, 2021, October 10, 2022 and June 15, 2023 did not contain an acceptable reason for why the Facility failed to collect the appropriate number of stormwater samples.   Further, the Facility did not provide documentation regarding the alleged lack of discharge.

### E. *Failure to File Timely Annual Reports*

ReConserve of California has failed to comply with Section XVI.A of the General Permit, which provides as follows:  "The Discharger shall certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year using the standardized format and checklists in SMARTS."

ReConserve of California's Annual Report for the reporting year 2021-2022 was filed late on October 10, 2022.

### F. *Deficient BMP Implementation*

Sections I.C, V.A and X.C.1.b of the General Permit require Dischargers to identify and implement minimum and advanced Best Management Practices ("BMPs") that comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the General Permit to reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice, considering technological availability and economic practicability and achievability.

PEA alleges that ReConserve of California has been conducting industrial activities at the site without adequate BMPs to prevent resulting non-storm water discharges.  Non-storm water discharges resulting from these activities are not from sources that are listed among the authorized non-storm water discharges in the General Permit, and thus are always prohibited.

ReConserve of California's failure to develop and/or implement adequate BMPs and pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial General Permit each day the Facility discharges storm water without meeting BAT and BCT.

*Specific BMP Deficiencies*

On March 29, 2023, the Facility was inspected by Lowell Cottle and Devon Owens of the Regional Water Quality Control Board.  During that inspection, Mr. Cottle and Mr. Owens noted the following BMP and monitoring and reporting deficiencies:

- Significant amounts of sediment and food waste were observed in the northeast area of the yard         (Photos 1 through 5). Sediment and food waste were discharging to the storm drain system.
- Heavy buildup of sediment was observed in the east and south areas of the yard (Photos 6 through    8). Several uncovered waste bins were observed during a rain event (Photo 8).
- Accumulated food waste and trash were observed around a red-dye diesel fuel tank on the south perimeter of the Facility (Photo 9).
- Tracking from commercial trucks was observed in the south and east areas of the yard (Photos 10 through 13).
- Crushed limestone was observed on the ground throughout the silo area. The crushed limestone was observed discharging from the silo area to the storm drain system (Photos 14 through 17).
- A large pile of food waste with stormwater exposure located next to the limestone silo (Photo 18).
- Oil staining was observed on the 12,000-gallon diesel fuel tank; the tank has no secondary containment in place. Sediment and trash were observed on the ground throughout the fueling area (Photos 19 and 20).
- Truck trailers are cleaned out in an area with ineffective containment. Sediment and food waste were observed outside the containment area (Photos 21 through 23).
- There is a bone yard located in the southeast corner of the yard containing scrap metals with stormwater exposure (Photo 24).
- Vehicle and equipment maintenance is conducted inside the maintenance shop (Photo 25).
- Waste oils and used antifreeze were in secondary containment (Photo 26).
- The East and West Drainage Inlets discharge directly to the Stockton City MS4. Note: This area was cleaned two days prior to the inspection in response to the Cease and Desist Order issued by the City of Stockton (Photos 27 through 29).
- Sediment was leaving the site at the Exit/Entrance and discharging to the storm drain system (Photo 30).
- The SWPPP was on site but missing required elements and is outdated.
- Monthly Visual Observations, Sampling Event Visual Observations, and the Annual Comprehensive Site Evaluation inspections were not available at the time of inspection.

- The SWPPP and Site Map uploaded to SMARTS are outdated and missing required elements.
- The Discharger has not submitted AD Hoc sample reports since coverage began.
- All sample results going back to 2018 have shown exceedances for one or more of the following parameters: Oil & Grease, pH, and TSS.
- A review of submitted sample results shows the Facility should currently be in Level II for Oil and Grease and TSS; and in Level I for pH.
- The Discharger was issued a 13267 Letter - Notice of Violation (NOV) on 10 May 2019 for failure to collect and analyze stormwater samples.
- The Discharger has failed to collect samples for the required number of Qualifying Storm Events (QSEs) since coverage began.

On July 1, 2021, the Facility entered Level 1 status for annual average exceedances of pH.
.

On August 17, 2023, QISP Micheline Kipf evaluated the facility, pursuant to Exceedance Response Action requirements of the General Permit.  The Level 1 ERA report certified on January 31, 2024, indicated the following BMP deficiencies:

- Inadequate material pile and boundary control BMPs
- Inadequate driveway entrance sheetflow mitigation
- Inadequate inlet filtration
- Inadequate housekeeping
- Inadequate exposure minimization
- Inadequate record keeping
- Inadequate BMP maintenance
- Inadequate pollution prevention team training

On July 1, 2020, the Facility entered Level 2 status for annual average exceedances of TSS. As of the date of this Notice, no BMP update documentation have been submitted to SMARTS.

PEA's investigation confirms that some or all of the aforementioned BMP deficiencies are continuing to occur at the Facility.

### G.  *Discharges In Violation of the General Permit*

Except as authorized by Special Conditions of the General Permit, Discharge Prohibition III(B) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States.  Unauthorized non-storm water discharges must be either eliminated or permitted by a separate NPDES permit.

Information available to PEA indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges.

PEA alleges that the Discharger has discharged storm water containing excessive levels of pollutants from the Facility to its Receiving Waters during at least every significant local rain event over 0.1 inches in the last five (5) years.

PEA hereby puts the Discharger on notice that each time the Facility discharges prohibited non-storm water in violation of Discharge Prohibition III.B of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

1.  Discharges in Excess of Technology-Based Effluent Limitations

The Industrial General Permit includes technology-based effluent limitations, which prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants.  (General Permit, Section X.H.)

The EPA has published Benchmark values set at the maximum pollutant concentration levels present if an industrial facility is employing BAT and BCT, as listed in Table 2 of the General Permit.  The General Permit includes "Numeric Action Levels" ("NALs") derived from these Benchmark values; however, the NALs do not represent technology-based criteria relevant to determining whether an industrial facility has implemented BMPs that achieve BAT/BCT. (General Permit, Section I.M. (Finding 62)).

ReConserve of California's exceedances of Benchmark values identified in the table listed below, indicate that it has failed and is failing to employ measures that constitute BAT and BCT, in violation of the requirements of the Industrial General Permit.   PEA alleges and notifies ReConserve of California that its storm water discharges from the Facility have consistently contained and continue to contain levels of pollutants that exceed Benchmark values as listed below.

These allegations are based on the Facility's self-reported data submitted to the Regional Water Board.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil,* 813 F.2d 1480, 1492 (9th Cir. 1988).

ReConserve of California's ongoing discharges of storm water containing levels of pollutants above EPA Benchmark values and BAT- and BCT-based levels of control also demonstrate that it has not developed and implemented sufficient BMPs at the Facility.  EPA

Benchmarks are relevant to the inquiry as to whether a facility has implemented BMPs. [*Cal. Sportfishing Prot. Alliance v. River City Waste Recyclers, LLC* (E.D.Cal. 2016) 205 F.Supp.3d 1128; *Baykeeper v. Kramer Metals, Inc.* (C.D.Cal. 2009) 619 F.Supp.2d 914, 925; *Waterkeepers Northern California v. AG Industrial Mfg. Inc.* (9th Cir. 2004) 375 F.3d 913, 919 (concentration levels in excess of EPA benchmarks are evidence supporting the citizen plaintiff's contention that defendant did not have appropriate BMPs to achieve BAT/BCT).]

ReConserve of California's failure to develop and/or implement adequate BMPs and pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial General Permit each day the Facility discharges storm water without meeting BAT and BCT.

2. Discharges in Excess of Receiving Water Limitations

In addition to employing technology based effluent limitations, the Industrial General Permit requires dischargers to comply with Receiving Water Limitations. Receiving Water Limitations found in Section VI of the General Permit prohibit storm water discharges and authorized non-storm water discharges to surface water that adversely impact human health or the environment.

Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment also constitute violations of the General Permit Receiving Water Limitation.

Applicable Water Quality Standards ("WQS") are set forth in the California Toxics Rule ("CTR") and the Regional Basin Plan. Exceedances of WQS are violations of the Industrial General Permit, the CTR, the Basin Plan, any parameter included as an impairment for the Facility's Receiving Waters on the 303(d) listing, and any parameters identified by the Regional Water Board as parameters assigned a total maximum daily load (TMDL).

Industrial storm water discharges must strictly comply with WQS, including those criteria listed in the applicable Basin Plan. (See *Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1166-67 (9th Cir. 1999).)

The Basin Plan establishes WQS for the San Joaquin River and its tributaries, including but not limited to the following:

• Waters shall not contain substances in concentrations that result in the deposition of material that cause nuisance or adversely affect beneficial uses.

• Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.

• Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.

•    All waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce other detrimental responses in aquatic organisms.

• Surface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use.

Information available to PEA indicates that the Facility's storm water discharges contain elevated concentrations of specific pollutants, as listed below.   These polluted discharges can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters.  Discharges of elevated concentrations of pollutants in the storm water from the Facility also adversely impact human health.  These harmful discharges from the Facility are violations of the General Permit Receiving Water Limitation.

Further, PEA puts ReConserve of California on notice that the Receiving Water Limitations are independent requirements that must be complied with, and that carrying out the process triggered by exceedances of the NALs listed at Table 2 of the General Permit does not amount to compliance with the Receiving Water Limitations.  The NALs do not represent water quality-based criteria relevant to determining whether an industrial facility has caused or contributed to an exceedance of a WQS, or whether it is causing adverse impacts to human health or the environment.

Section XX.B of the General Permit provides that when a facility's industrial storm water discharges and/or authorized NSWDs are determined to contain pollutants that are in violation of Receiving Water Limitations contained in Section VI, the Discharger must conduct a facility evaluation to identify pollutant source(s) within the facility that are associated with industrial activity and whether the BMPs described in the SWPPP have been properly implemented, assess its current SWPPP, and certify via SMARTS any additional BMPs identified which are necessary in order to meet the Receiving Water Limitations.

PEA alleges that from at least  March 10, 2019 to the present, ReConserve of California has been in violation of the Receiving Water Limitations provision of Section VI of the General Permit, as evidenced by its exceedances of the applicable Water Quality Standards set forth in the Regional Basin Plan, indicated below.

Specifically, ReConserve of California's sample analyses summarized below violate the strict numeric effluent limitations (NELs) established for San Joaquin River and French Camp Slough Duck Creek.

Further, ReConserve of California has failed to comply with Section XX.B of the General Permit. Failure to comply with the additional Water Quality-Based Corrective Action requirements listed in Section XX.B is an additional violation of the General Permit.

The following discharges of pollutants from the Facility have violated Discharge Prohibitions of the General Permit and are evidence of ongoing violations of Effluent Limitations:

| Sample Collection Date | Outfall | Parameter | Sample Analysis Result* |
|---|---|---|---|
| **Reporting Year 2018-19** | | | |
| 1/16/2019 | East Outfall | O&G | 18.7 |
| | | TSS | 258 |
| | | pH | Not tested |
| | West Outfall | O&G | 16 |
| | | pH | Not tested |
| 5/16/2019 | East Outfall | TSS | 142 |
| | | pH | Not tested |
| | West Outfall | O&G | 16.5 |
| | | TSS | 216 |
| | | pH | Not tested |
| | | | |
| **Reporting Year 2019-20** | | | |
| 12/2/2019 | East Outfall | TSS | 104 |
| | West Outfall | O&G | 29.2 |
| | | TSS | 276 |
| | | pH | 6.3 |
| | | | |
| **Reporting Year 2020-21** | | | |
| 1/22/2021 | East Outfall | O&G | 27.8 |
| | | TSS | 592 |
| | | pH | 10 |
| | West Outfall | O&G | 35.6 |
| | | TSS | 394 |
| | | pH | 9.1 |
| | | | |

60-Day Notice of Intent to Sue
ReConserve of California
March 8, 2024
Page 19 of 29

| Sample Collection Date | Outfall | Parameter | Sample Analysis Result* |
|---|---|---|---|
| **Reporting Year 2021-22** | | | |
| 4/21/2022 | East Outfall | TSS | 180 |
| | | pH | 8.6 |
| | West Outfall | TSS | 121 |
| | | | |
| **Reporting Year 2022-23** | | | |
| 11/8/2022 | East Outfall | O&G | 23.3 |
| | | TSS | 259 |
| | | pH | 10.9 |
| | West Outfall | O&G | 24.7 |
| | | TSS | 457 |
| | | pH | 8.8 |
| 3/29/2023 | East Outfall | TSS | 620 |
| | | pH | 8.7 |
| | West Outfall | TSS | 1460 |
| 5/2/2023 | East Outfall | O&G | 22.4 |
| | | TSS | 423 |
| | | pH | 9.4 |
| | West Outfall | O&G | 22.4 |
| | | TSS | 437 |
| | | pH | 9.1 |
| | | | |
| **Reporting Year 2023-24** | | | |
| 12/20/2023 | East Outfall | pH | 10.3 |
| | West Outfall | pH | 9.9 |
| | | | |

*All units are listed in milligrams per liter (mg/L), except pH, which is listed in pH units (SU) and specific electrical conductivity which is listed in micromhos per centimeter

Listed below are the EPA Benchmark numeric action levels associated with the parameters, as identified on ***Table 2 of the General Permit,*** as well as the Maximum Contaminant Levels (MCLs) listed in the ***California Code of Regulations, Title 22, Section 64431*** (Table 64431-A) and the Water Quality Control Plan ***(Basin Plan)*** for the ***California Regional Water Quality Control Board, Central Valley Regional, Fifth Edition*** (Revised May 2018), Basin Plan Table 3-1, Trace Element Water Quality Objectives.

| Parameter | EPA Benchmark Annual NAL | EPA Benchmark NAL instantaneous Value | CV BASIN PLAN Table 3-1 MCL value | CCR Title 22 Section 64431 |
|---|---|---|---|---|
| pH | N/A | >6 or <9 SU | >6.5 or >8.5 | N/A |
| Total Suspended Solids (TSS) | 100 mg/L | 400 mg/L | N/A | N/A |
| Oil & Grease | 15 mg/L | 25 mg/L | N/A | N/A |
| Zinc | .26 mg/L | N/A | .10 mg/L | N/A |
| Copper | .0332 mg/L | N/A | .0056 mg/L | N/A |
| Lead | .262 mg/L | N/A | N/A | .05 mg/L |
| Chemical Oxygen Demand (COD) | 120 mg/L | N/A | N/A | N/A |
| Biochemical Oxygen Demand (BOD) | 30 mg/L | N/A | N/A | N/A |
| Aluminum | .75 mg/L | N/A | N/A | 1.0 mg/L |
| Iron | 1.0 mg/L | N/A | .30 mg/L | N/A |
| Nitrate + Nitrate Nitrogen | .68 mg/L | N/A | N/A | 45 mg/L |
| Phosphorus | 2.0 mg/L | N/A | N/A | N/A |
| Ammonia | 2.14 mg/L | N/A | N/A | N/A |
| Magnesium | .064 mg/L | N/A | N/A | N/A |
| Arsenic | .064 mg/L | N/A | N/A | N/A |
| Cadmium | .0053 mg/L | N/A | .00022 mg/L | .01 mg/L9i |
| Nickel | 1.02 mg/L | N/A | N/A | N/A |
| Mercury | .0014 mg/L | N/A | N/A | N/A |
| Selenium | .005 mg/L | N/A | N/A | N/A |
| Silver | .0183 mg/L | N/A | .01 mg/L | .05 mg/L |

## H.  *Failure to Comply with Exceedance Response Action Requirements*

As of July 1, 2015, the date the current General Permit became effective, all Dischargers were in "Baseline status" for all parameters listed in Table 2 of the Permit.   (General Permit, Section XII.B.

Level 1 ERA Evaluation and Report

Pursuant to Section XII.C of the General Permit, a Discharger's Baseline status for any given parameter changes to "Level 1 status" if sampling results indicate either an annual average or instantaneous NAL exceedance for that same parameter.

Level 1 status commences on July 1 following the Reporting Year during which the exceedance(s) occurred, and the Discharger enters the Exceedance Response Action ("ERA") process. The ERA process requires the discharger to conduct a Level 1 ERA Evaluation, with the assistance of a Qualified Industrial Storm Water Practitioner ("QISP"), of the industrial pollutant sources at the Facility that are or may be related to the NAL exceedance(s), by October 1 following commencement of Level 1 status.

The Level 1 ERA Evaluation must include the identification of the corresponding BMPs in the SWPPP, as well as any additional BMPs and SWPPP revisions necessary to prevent future NAL exceedances and to comply with the requirements of the General Permit.

Based upon the Level 1 ERA Evaluation, the Discharger is required to, as soon as practicable, but no later than January 1 following commencement of Level 1 status, prepare a Level 1 ERA Report. (Section XII.C.2). The Level 1 Report must be prepared by a QISP and must include a summary of the Level 1 ERA Evaluation, a detailed description of the necessary SWPPP revisions, and any additional BMPs for each parameter that exceeded an NAL.

The SWPPP revisions and additional BMP development and implementation must also be completed by January 1. The Level 1 status discharger is required to submit via SMARTs the Level 1 ERA Report certifying that the Level 1 ERA Evaluation has been conducted, and necessary SWPPP revisions and BMP implementation has been completed. The certification also requires the QISP's identification number, name, and contact information (telephone number, e-mail address) no later than January 1 following commencement of Level 1 status.

A Discharger's Level 1 status for a parameter will return to Baseline status if a Level 1 ERA Report has been completed, all identified additional BMPs have been implemented, and results from four (4) consecutive qualified storm events that were sampled subsequent to BMP implementation indicate no additional NAL exceedances for that parameter.

Level 2 ERA Action Plan

A Discharger will enter Level 2 status if there is an NAL exceedance of the same parameter occurring during the time the Discharger is in Level 1 status.

By January 1 following the reporting year during which the NAL exceedance(s) occurred, Dischargers in Level 2 status must certify and submit via SMARTS a Level 2 ERA Action Plan prepared by a QISP that addresses each new Level 2 NAL exceedance.

For each new Level 2 exceedance, the Level 2 Action Plan must select one or more of three available "demonstrations" the Facility will perform to address the exceedance(s). These demonstrations include (a) Industrial Activity BMPs; (b) Non-Industrial Pollutant Source

Demonstration; and (c) Natural Background Pollutant Source Demonstration, and are more fully described below under the Level 2 Technical Report provisions.

The Level 2 ERA Action Plan must address all drainage areas with corresponding Level 2 exceedances and must include a time schedule and detailed description of the specific tasks required to complete the selected demonstration(s).  Further, all elements of the Action Plan must be implemented as soon as possible and completed no later than one year following the submission of the Action Plan.

<u>Level 2 ERA Technical Report</u>

On January 1 of the reporting year following submittal of a Level 2 ERA Action Plan, Dischargers in Level 2 must certify and submit a Level 2 ERA Technical Report prepared by a QISP that includes the Facility's selection of either:

(a) *Industrial Activity BMP Demonstration* (whereby the Facility evaluates their implemented BMPs and additional BMPs identified in the Level 2 ERA Action Plan to determine whether implementation of the BMPs has achieved compliance with the effluent limitations of the General Permit and are expected to eliminate future NAL exceedances;

(b) *Non-Industrial Pollutant Source Demonstration* (whereby the Facility determines that its NAL exceedances are attributable solely to the presence of non-industrial pollutant sources); or

(c) *Natural Background Pollutant Source Demonstration* (whereby the Facility determines that its NAL exceedances are attributable solely to the presence of pollutants in the natural background that has not been disturbed by industrial activities).

**<u>Failure to Submit Level 1 ERA Reports</u>**

Based on the sample data summarized above, the Facility exceeded the EPA Benchmark NAL for TSS and was elevated to Level 1 Status on July 1, 2019, pursuant to Section XII.C – Exceedance Response Actions -- of the General Permit.

Pursuant to Section XII.C.2 of the General Permit, the Facility was required to have a QISP conduct an evaluation of the Facility by October 1, and to upload an adequate Level 1 ERA Report on or before January 1, 2020.

Based on the sample data summarized above, the Facility exceeded the EPA Benchmark NAL for O&G and was elevated to Level 1 Status on July 1, 2020, pursuant to Section XII.C – Exceedance Response Actions -- of the General Permit.

Pursuant to Section XII.C.2 of the General Permit, the Facility was required to have a QISP conduct an evaluation of the Facility by October 1, and to upload an adequate Level 1 ERA Report on or before January 1, 2021.

As of the date of this Notice, PEA alleges that ReConserve of California has failed to conduct an adequate Level 1 status evaluation and has also failed to submit these Level 1 ERA reports by uploading them into the SMARTS system.

### Failure to Submit Level 2 Action Plans

While in Level 1 status, the Facility again exceeded the EPA Benchmark NAL for TSS. These results elevated ReConserve of California to Level 2 Status on July 1, 2020, pursuant to Section XII.D of the General Permit.

Pursuant to Section XII.D.1 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 ERA Action Plan that addresses each new Level 2 NAL exceedance at the Facility on or before January 1, 2021.

While in Level 1 status, the Facility again exceeded the EPA Benchmark NAL for O&G. These results elevated ReConserve of California to Level 2 Status on July 1, 2021, pursuant to Section XII.D of the General Permit.

Pursuant to Section XII.D.1 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 ERA Action Plan that addresses each new Level 2 NAL exceedance at the Facility on or before January 1, 2022.

While in Level 1 status, the Facility again exceeded the EPA Benchmark NAL for pH. These results elevated ReConserve of California to Level 2 Status on July 1, 2023, pursuant to Section XII.D of the General Permit.

Pursuant to Section XII.D.1 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 ERA Action Plan that addresses each new Level 2 NAL exceedance at the Facility on or before January 1, 2024.

As of the date of this Notice, PEA alleges that ReConserve of California has failed to submit these Level 2 ERA Action Plans for the Facility by uploading them into the SMARTS system.

### Failure to Submit Level 2 Technical Reports

Pursuant to Section XII.D.2 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 Technical Report on or before January 1, 2022.

Pursuant to Section XII.D.2 of the General Permit, the Facility was required to have a QISP certify and submit via SMARTS a Level 2 Technical Report on or before January 1, 2023.

As of the date of this Notice, PEA alleges that ReConserve of California has failed to submit these Level 2 Technical Reports for the Facility by uploading them into the SMARTS system.

Furthermore, on April 14, 2023, the Regional Water Board issued a Notice of Violation (NOV) to ReConserve of California for failure to follow the Exceedance Response Action requirements of Section XII of the General Permit.

Every day that ReConserve of California operates at the Facility without complying with the required Exceedance Response Actions pursuant to the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

ReConserve of California has been in daily and continuous violation of the General Permit's ERA requirements every day since January 1, 2020.  These violations are ongoing, and PEA will include additional violations when information becomes available.

## I. _Failure to Comply with the Mandates of the Regional Water Board_

Pursuant to Section XIX.B of the General Permit, Regional Water Boards have general authority to enforce the provisions and requirements of the General Permit, including reviewing SWPPPs, Monitoring Implementation Plans, ERA Reports, and Annual Reports and requiring Dischargers to revise and re-submit PRDs, conducting compliance inspections, and taking enforcement actions.

As fully discussed above, the Regional Water Quality Control Board issued ReConserve of California an official Notice of Violation on April 14, 2023, requiring that by May 15, 2023 the Facility:

1. Promptly clean all crushed limestone, food waste, and sediment that have the potential to discharge to the storm drain system.
2. Identify and eliminate all sources of debris, waste, spills, tracked materials, or leaked materials that can be mobilized by stormwater runoff.
3. Install and maintain appropriate BMPs to reduce or eliminate industrial pollutants from discharging offsite.
4. Clean oil spills on the outside of the 12,000-gallon diesel fuel tank and on the ground to ensure there is no stormwater exposure to spilled fuel.
5. Regularly sweep areas where sediment tracking and food waste spills have occurred to prevent off-site discharge of materials to the storm drains. If necessary, apply crushed rock or other suitable material to stabilize the Site and prevent sediment tracking.

6. Collect and analyze stormwater samples from four QSEs per reporting year as required by the Industrial General Permit.
7. Collect and record Sampling Event Visual Observations and Monthly Visual Observations as required by the Industrial General Permit.
8. Ensure that corrective actions are being recorded and addressed in Monthly Visual Observation Inspections for BMP deficiencies, food waste and crushed limestone spills, tracking issues, evidence of sediment discharging to the storm drains, and any BMP deficiencies or housekeeping issues that may arise.
9. Update the SWPPP and Site Map to include all required elements identified in the Industrial General Permit section X.A. and X.E. After the SWPPP has been updated, the Discharger is responsible for training the Pollution Prevention Team on the newly updated SWPPP and maintaining a copy of the updated SWPPP onsite.
10. Training should be conducted by a Qualified Industrial Stormwater Practitioner (QISP) or a Trainer of Record (ToR). The Pollution Prevention Team should be trained to accurately identify and document visual observations and understand sampling requirements.
11. If any BMPs will take longer than 30 days to implement, please provide a schedule for implementation and upload monthly updates into SMARTS.

Additional requirements in the NOV are as follows:  In order to demonstrate compliance with the Industrial General Permit, please submit the following documents to your SMARTS account by 15 May 2023:

1. Photos demonstrating that all crushed limestone, food waste, sediment, and trash throughout the Facility have been cleaned.
2. Photos demonstrating that oil spills on the 12,000-gallon diesel fuel tank have been cleaned.
3. Photos demonstrating oil absorbing BMPs have been installed around the 12,000-gallon diesel fuel tank.
4. Photos demonstrating containment BMPs have been installed around the crushed limestone silo.
5. Submit a copy of the Monthly Visual Observation record for April 2023 and copies of visual observations for the next three months (May, June, and July). If stormwater sampling is conducted, also submit Sampling Event Visual Observations.
6. Submit outstanding AD Hoc sample reports.
7. Submit updated SWPPP and Site Map.
8. Submit training records.

ReConserve of California has failed to comply with those mandates as of the date of this Notice.

### J.   *Failure to Comply with Facility SWPPP*

The Facility's SWPPP indicates that the Facility will collect and analyze storm water samples from two qualified storm events within the first half of each reporting year (July 1 to December 31) and two QSEs within the second half of each reporting year (January 1 to June 30).

As detailed above, the Facility missed collecting storm water samples in the reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023.

The Facility's Site Map, attached to the Facility's current SWPPP, identifies 3 discharge locations from which storm water run-off samples are to be collected:  D1, D2 and unlisted driveway discharge.

As specified above, ReConserve of California failed to collect storm water samples from all outfalls as its Facility, in violation of its current SWPPP.

The Monitoring Implementation Section of the Facility's SWPPP identifies the parameters for which the Facility's storm water run-off samples must be analyzed, including pH, oil & grease, Total Suspended Solids, .

As specified above, the storm water run-off samples the facility analyzed and uploaded into the SMARTS system for samples collected during reporting years 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 failed to include sample analyses for the required parameter of **pH**.  Furthermore, Section X.H.g of the General Permit requires all Dischargers to develop and implement management procedures to ensure that appropriate staff implements all elements of the Facility's SWPPP, including the Monitoring Implementation Plan.

### K.   *Failure to Properly Train Employees/Facility Pollution Prevention Team*

Section X.D.1 of the General Permit requires each Facility to establish a Pollution Prevention Team responsible for assisting with the implementation of the requirements of the General Permit. The Facility is also required to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned Pollution Prevention Team members are temporarily unavailable (due to vacation, illness, out of town business, or other absences).

Section X.H.f of the General Permit also requires that each Facility ensure that all Pollution Prevention Team members implementing the various compliance activities of the General Permit are properly trained in at least the following minimum requirements: BMP implementation, BMP effectiveness evaluations, visual observations, and monitoring activities.   Further, if a Facility enters Level 1 status, appropriate team members must be trained by a QISP.

Based on the foregoing violations, it is clear that ReConserve of California has either not properly established its Pollution Prevention Team, or has not adequately trained its Pollution Prevention Team, in violation of Sections X.D.1 and X.H.f of the General Permit.

ReConserve of California may have had other violations that can only be fully identified and documented once discovery and investigation have been completed. Hence, to the extent possible, PEA includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

## IV.   THE PERSON OR PERSONS RESPONSIBLE FOR THE VIOLATIONS

The individuals and entities responsible for the alleged violations are ReConserve of California – Stockton, Inc., ReConserve, Inc. as well as the respective corporate officers and employees of the Facility responsible for compliance with the CWA.

## V.   THE DATE, DATES, OR REASONABLE RANGE OF DATES OF THE VIOLATIONS

The range of dates covered by this 60-day Notice is March 10 2019, to the date of this Notice. PEA may from time to time update this Notice to include all violations which may occur after the range of dates covered by this Notice. Some of the violations are continuous in nature; therefore, each day constitutes a violation.

## VI.   CONTACT INFORMATION

The entity giving this 60-day Notice is:

Pacific Environmental Advocates
1275 4th Street #4096
Santa Rosa, CA  95404

PEA has retained counsel in this matter as follows:

Xhavin Sinha
Sinha Law
3901 Lick Mill Boulevard, Suite 356
Santa Clara, CA 95054
Telephone: (408) 791-0432

Email: xsinha@sinha-law.com

**To ensure proper response to this Notice, all communications should be addressed to PEA's legal counsel, Mr. Xhavin Sinha.**

## VII.    RELIEF SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for un-permitted discharges of pollutants.  33 U.S.C. §§ 1365(a)(1) and (f), §1362(5).

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five (5) years prior to the date of the Notice Letter.  **These provisions of law currently authorize civil penalties of $56,460.00 per day, for each violation occurring on or after November 2, 2015.**

In addition to civil penalties, PEA will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law.

Lastly, pursuant to 33 U.S.C. § 1365(d), PEA will seek to recover its pre and post-litigation costs, including all attorneys' and experts' fees and costs incurred in this matter.

## VIII.    CONCLUSION

The CWA specifically provides a 60-day notice period to promote resolution of disputes. PEA encourages ReConserve of California's counsel to contact PEA within 20 days of receipt of this Notice by sending an email to xsinha@sinha-law.com to initiate a discussion regarding the violations detailed herein and to determine how ReConserve of California may resolve this matter without the necessity of litigation.

During the 60-day notice period, PEA is willing to discuss effective remedies for the violations; however, if ReConserve of California wishes to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated soon so that they may be completed before the end of the 60-day notice period.

If PEA does not receive a response from ReConserve of California or its counsel before the expiration of the 60-day notice period, this matter will be transferred to PEA's litigation counsel.  Thank you.

Sincerely,

# Pacific Environmental Advocates

Attachment 1. Annual Reports

Copies to:

Michael S. Regan, Director, U.S. Environmental Protection Agency:
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
Email: regan.michael@epa.gov

Martha Guzman Aceves, Regional Administrator, U.S. EPA – Region 9:
Sarah Martinez
75 Hawthorne Street
San Francisco, CA, 94105
Email: martinez.sarah@epa.gov

Laurie Kermish Manager, Water Law Section, Office of Regional Counsel
Email: kermish.laurie@epa.gov

Eileen Sobeck, Executive Director
State Water Resources Control Board:
P.O. Box 100
Sacramento, CA 95812-0100
Email: eileen.sobeck@waterboards.ca.gov

Eileen White, Executive Officer for the Water Board SF Bay Region
SF Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612
Email: eileen.white@waterboards.ca.gov

Mayumi Okamoto, State Water Board Office of Enforcement
Email: Mayumi.Okamoto@waterboards.ca.gov

California Water Boards Stormwater Program, stormwater@waterboards.ca.gov

# ATTACHMENT 1
# ANNUAL REPORTS

State of California
STATE WATER RESOURCES CONTROL BOARD



GAVIN NEWSOM
GOVERNOR

JARED BLUMENFELD
SECRETARY FOR
ENVIRONMENTAL PROTECTION

2018-2019
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2018 through June 30, 2019

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                     WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City:  Stockton                     Contact Person:  Ron Alexander

State:  CA                          Phone:  209-982-5085

Zip:  95206                         Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                     Contact Person:  Ron  Alexander

State:  CA                          Phone:  209-982-5085

Zip:  95206                         Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                     Contact Person:  Ron Alexander

State:  CA                          Phone:  209-982-5085  Ext: 25085

Zip:  95206                         Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER





2018-2019
Annual Report for WDID 5S39I017506

## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☐ Yes          ☒ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes          ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes          ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes          ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2018-2019
Annual Report for WDID 5S39I017506



7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes      ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes      ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes      ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes      ☐ No

If Yes, what date was the annual evaluation conducted?    02/04/2019

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2018-2019
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                    Date:  07/10/2019

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

2018-2019

**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|
| Question 3 | there were no qualifying events during the first quarter of this period |

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|

2018-2019

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | Yes |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | Yes |
| E.Coli and Enterococcus | Pathogens | Yes |
| Metals Screen | Mercury | Yes |
| Specific Conductivity | Electrical Conductivity | Yes |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
### STATE WATER RESOURCES CONTROL BOARD



2019-2020
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2019 through June 30, 2020

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                             WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address:  704 Zephyr St

City:  Stockton                           Contact Person:  Ron Alexander

State:  CA                                Phone:  209-982-5085

Zip:  95206                               Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                           Contact Person:  Ron  Alexander

State:  CA                                Phone:  209-982-5085

Zip:  95206                               Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                           Contact Person:  Ron Alexander

State:  CA                                Phone:  209-982-5085  Ext: 25085

Zip:  95206                               Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♻ RECYCLED PAPER





2019-2020
Annual Report for WDID 5S39I017506

## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

 2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes          ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes          ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes          ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♲ RECYCLED PAPER



2019-2020
Annual Report for WDID 5S39I017506



GAVIN NEWSOM
GOVERNOR

JARED BLUMENFELD
SECRETARY FOR
ENVIRONMENTAL PROTECTION

7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes    ☐ No

If No, what date will the parameter(s) will be added to the SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes    ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes    ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes    ☐ No

If Yes, what date was the annual evaluation conducted?    03/04/2020

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♻ RECYCLED PAPER



2019-2020
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                    Date:  06/22/2020

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♻ RECYCLED PAPER

2019-2020

**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| Supporting Documentation | Storm water sample 7/3/2019 | storm water sample 2 | 06/22/2020 | null/null | b876991629fc5bc375b b3fbe2adba542e8956d 21756c148b1ccf4d211 c7e2e |
| Supporting Documentation | storm water sample 12/31/2019 | storm water sample 1 | 06/22/2020 | null/null | b76f71f2238d1235dc6 191293708295a187e1 bb1953a358ebcc41f5f b34ddf |

2019-2020

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | Yes |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | Yes |
| E.Coli and Enterococcus | Pathogens | Yes |
| Metals Screen | Mercury | Yes |
| Specific Conductivity | Electrical Conductivity | Yes |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
STATE WATER RESOURCES CONTROL BOARD



GAVIN NEWSOM
GOVERNOR

JARED BLUMENFELD
SECRETARY FOR
ENVIRONMENTAL PROTECTION

2020-2021
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2020 through June 30, 2021

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                                    WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City:  Stockton                          Contact Person:  Ron Alexander

State:  CA                               Phone:  209-982-5085

Zip:  95206                              Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                          Contact Person:  Ron  Alexander

State:  CA                               Phone:  209-982-5085

Zip:  95206                              Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                          Contact Person:  Ron Alexander

State:  CA                               Phone:  209-982-5085  Ext: 25085

Zip:  95206                              Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR  |  EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2020-2021
Annual Report for WDID 5S39I017506



## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

 2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes        ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes        ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes        ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♲ RECYCLED PAPER




2020-2021
Annual Report for WDID 5S39I017506

7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes     ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes     ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes     ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes     ☐ No

If Yes, what date was the annual evaluation conducted?    12/21/2020

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2020-2021
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).


## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                              Date:  07/13/2021

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

 RECYCLED PAPER

2020-2021
**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| Supporting Documentation | Reconserve Lab results | storm water test results | 07/13/2021 | null/null | fc9a8b9d796a14e78bb8cad15fbf866c83a2485f5f90ddc8b58c7eb54bf7f |

2020-2021

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | Yes |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | Yes |
| E.Coli and Enterococcus | Pathogens | Yes |
| Metals Screen | Mercury | Yes |
| Specific Conductivity | Electrical Conductivity | Yes |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
STATE WATER RESOURCES CONTROL BOARD



2021-2022
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2021 through June 30, 2022

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**                                   WDID:  5S39I017506

Business Name:  ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City:  Stockton                          Contact Person:  Ron Alexander

State:  CA                               Phone:  209-982-5085

Zip:  95206                              Email:  ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes:  2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                          Contact Person:  Ron  Alexander

State:  CA                               Phone:  209-982-5085

Zip:  95206                              Email:  ralexander@reconserve.com

**C. Facility Billing Information**

Business Name:  ReConserve of California Stockton Inc

Mailing Address:   704 Zephyr St

City:  Stockton                          Contact Person:  Ron Alexander

State:  CA                               Phone:  209-982-5085  Ext: 25085

Zip:  95206                              Email:  ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2021-2022
Annual Report for WDID 5S39I017506



## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☐ Yes          ☒ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

 2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes          ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes          ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes          ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER





2021-2022
Annual Report for WDID 5S39I017506

7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes        ☐ No

If No, what date will the parameter(s) will be added to the SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes        ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes        ☐ No

If Yes, what date was the annual evaluation conducted?    04/21/2022

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2021-2022
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes          ☐ No

If No, see Attachment 1, Summary of Explanation.

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:  Ron Alexander

Title:  General Manager                                    Date:  10/10/2022

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812  |  www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

2021-2022
**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|
| Question 3 | not a significant amount of rainfall to meet required levels for testing. |

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| Other | Reconserve Stktn-SP_2206637-20220519 | | 10/10/2022 | null/null | 28a6961481b98a2830 59b55627646b6fec581 2eda7dffa5b684816e3 b1e5dd0 |

2021-2022

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | No |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | No |
| E.Coli and Enterococcus | Pathogens | No |
| Metals Screen | Mercury | No |
| Specific Conductivity | Electrical Conductivity | No |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |

State of California
STATE WATER RESOURCES CONTROL BOARD



2022-2023
**ANNUAL REPORT**
FOR STORM WATER DISCHARGES
ASSOCIATED WITH INDUSTRIAL ACTIVITIES

Reporting Period July 1, 2022 through June 30, 2023

**Retain a copy of the completed Annual Report for your records.**

Please remember that a Notice of Termination and new Notice of Intent are required whenever a facility operation is relocated or changes ownership.

If you have any questions, please contact your Regional Board Industrial Storm Water Permit Contact. The names, telephone numbers, and e-mail addresses of the Regional Board contacts, as well was the Regional Board office addresses, can be found at:
http://www.waterboards.ca.gov/water_issues/programs/stormwater/contact.shtml

## General Information

**A. Facility Information**

WDID: 5S39I017506

Business Name: ReConserve of California Stockton Inc

Physical Address: 704 Zephyr St

City: Stockton

State: CA

Zip: 95206

Contact Person: Ron Alexander

Phone: 209-982-5085

Email: ralexander@reconserve.com

Standard Industrial Classification (SIC) Codes: 2048-Prepared Feed and Feed Ingredients for A

**B. Facility Owner Information**

Business Name: ReConserve of California Stockton Inc

Mailing Address: 704 Zephyr St

City: Stockton

State: CA

Zip: 95206

Contact Person: Ron Alexander

Phone: 209-982-5085

Email: ralexander@reconserve.com

**C. Facility Billing Information**

Business Name: ReConserve of California Stockton Inc

Mailing Address: 704 Zephyr St

City: Stockton

State: CA

Zip: 95206

Contact Person: Ron Alexander

Phone: 209-982-5085  Ext: 25085

Email: ralexander@reconserve.com

JOAQUIN ESQUIVEL, CHAIR | EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812 | www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER



2022-2023
Annual Report for WDID 5S39I017506



GAVIN NEWSOM
GOVERNOR

YANA GARCIA
SECRETARY FOR
ENVIRONMENTAL PROTECTION

## Question Information

1. Has the Discharger conducted monthly visual observations (including authorized and unauthorized Non-Storm Water Discharges and Best Management Practices) in accordance with Section XI.A.1?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

2. Has the Discharger conducted sampling event visual observations at each discharge location where a sample was obtained in accordance with Section XI.A.2?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

3. Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

4. How many storm water discharge locations are at your facility?

2

5. Has the Discharger chosen to select Alternative Discharge Locations in accordance with Section XI.C.3?

☐ Yes        ☒ No

6. Has the Discharger reduced the number of sampling locations within a drainage area in accordance with the Representative Sampling Reduction in Section XI.C.4?

☐ Yes        ☒ No

6.1. Has the Discharger reduced the frequency of sampling at the facility area in accordance with the Sample Frequency Reduction in Section XI.C.7?

☐ Yes        ☒ No

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER





2022-2023
Annual Report for WDID 5S39I017506

7. Permitted facilities located within an impaired watershed must assess for potential pollutants that may be present in the facility's industrial storm water discharge. Using the table below, populated based on the facility's location, indicate the presence of the potential pollutant at the facility.

See Attachment 2 for the List of Identified Pollutants within the Impaired Watershed.

8. Has the Discharger included the above pollutants in the SWPPP pollutant source assessment and assessed the need for analytical monitoring for the pollutants?

☒ Yes     ☐ No

If No, what date will the parameter(s) will be added to the
SWPPP and Monitoring Implementation Plan?

9. Were all samples collected in accordance with Section XI.B.5?

☒ Yes     ☐ No

If No, see Attachment 1, Summary of Explanation.

10. Has any contained storm water been discharged from the facility this reporting year?

☐ Yes     ☒ No

If Yes, see Attachment 1, Summary of Explanation.

11. Has the Discharger conducted one (1) annual evaluation during the reporting year as required in Section XV?

☒ Yes     ☐ No

If Yes, what date was the annual evaluation conducted?    11/08/2022

If No, see Attachment 1, Summary of Explanation.

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

♺ RECYCLED PAPER



2022-2023
Annual Report for WDID 5S39I017506



12. Has the Discharger maintained records on-site for the reporting year in accordance with XXI.J.3?

☒ Yes        ☐ No

If No, see Attachment 1, Summary of Explanation.

13. Did additional NAL exceedances occur in the same drainage area for the facility's Level 2 parameter(s) (if no Level 2 parameters, select No)?

☐ Yes        ☒ No

14. Was the Level 2 ERA Technical Report updated (if no Level 2 parameters, select No)?

☐ Yes        ☒ No

If No, explain:

               was not aware of update needed

If your facility is subject to Effluent Limitation Guidelines in Attachment F of the Industrial General Permit, include your specific requirements as an attachment to the Annual Report (attach as file type: Supporting Documentation).

## ANNUAL REPORT CERTIFICATION

I certify under penalty of law that this document and all attachments were prepared under the direction or supervision in accordance with a system designed to assure that qualified personnel propoerly gether and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Printed Name:   Ron Alexander

Title:   General Manager

Date:   06/15/2023

JOAQUIN ESQUIVEL, CHAIR   |   EILEEN SOBECK, EXECUTIVE OFFICER

1001 I Street, PO Box 1977, Sacramento, California, 95812   |   www.waterboards.ca.gov, ph:1-866-563-3107, fax:(916) 341-5543

RECYCLED PAPER

2022-2023

**Annual Report for WDID 5S39I017506**

**Summary of Explanations**

| Explanation Question | Explanation Text |
|---|---|
| | |

**Summary of Attachments**

| Attachment Type | Attachment Title | Description | Date Uploaded | Part Number | Attachment Hash |
|---|---|---|---|---|---|
| | | | | | |

2022-2023

**Annual Report for WDID 5S39I017506**

**List of Identified Pollutants within the Impaired Watershed**

| Parameter | Pollutant | Present at Facility? |
|---|---|---|
| Carcinogenic Pesticide Screen | Group A Pesticides | No |
| Chlorpyrifos | Chlorpyrifos | No |
| Diazinon | Diazinon | No |
| Dissolved Oxygen | Oxygen, Dissolved | No |
| E.Coli and Enterococcus | Escherichia coli (E. coli) | No |
| E.Coli and Enterococcus | Pathogens | No |
| Metals Screen | Mercury | No |
| Specific Conductivity | Electrical Conductivity | No |
| Total DDT (including DDD, DDE and DDT) | DDT (Dichlorodiphenyltrichloroethane) | No |



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**

For delivery information, visit our website at *www.usps.com*

Oakland CA 94612

Certified Mail Fee $4.70

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $0.00
- ☐ Return Receipt (electronic) $0.00
- ☐ Certified Mail Restricted Delivery $0.00
- ☐ Adult Signature Required $0.00
- ☐ Adult Signature Restricted Delivery $0.00

Postage $9.85

Total Postage and Fees $14.25

Postmark Here
MAR 9 2024
US POSTAL SERVICE
03/09/2024

Sent To ILEEN WHITE
Street and Apt. No., or PO Box No. 1515 CLAY STREET SUITE 1400
City, State, ZIP+4® OAKLAND CA 94612

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**

For delivery information, visit our website at *www.usps.com*

Santa Monica CA 90403

Certified Mail Fee $4.70

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $0.00
- ☐ Return Receipt (electronic) $0.00
- ☐ Certified Mail Restricted Delivery $0.00
- ☐ Adult Signature Required $0.00
- ☐ Adult Signature Restricted Delivery $0.00

Postage $9.85

Total Postage and Fees $14.25

Postmark Here
MAR 9 2024
03/09/2024

Sent To Meyer Laskin / Keith Rudd
Street and Apt. No., or PO Box No. 9211 Wilshire Boulevard Suite 410
City, State, ZIP+4® Santa Monica CA 90403

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*

San Francisco CA 94105

Certified Mail Fee $4.70

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $0.00
- ☐ Return Receipt (electronic) $0.00
- ☐ Certified Mail Restricted Delivery $0.00
- ☐ Adult Signature Required $0.00
- ☐ Adult Signature Restricted Delivery $0.00

Postage $9.85

Total Postage and Fees $14.25

Postmark Here
MAR 9 2024
US POSTAL SERVICE
03/09/2024

Sent To MARTHA GUZMAN / SARAH MARINEZ
Street and Apt. No., or PO Box No. 75 HAWTHORNE ST
City, State, ZIP+4® SAN FRANCISCO CA 94105

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*

Stockton CA 95206

Certified Mail Fee $4.70

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $0.00
- ☐ Return Receipt (electronic) $0.00
- ☐ Certified Mail Restricted Delivery $0.00
- ☐ Adult Signature Required $0.00
- ☐ Adult Signature Restricted Delivery $0.00

Postage $9.85

Total Postage and Fees $14.25

Postmark Here
MAR 9 2024
03/09/2024

Sent To Gen Alexander / ReConserve Ca
Street and Apt. No., or PO Box No. 794 Zephyr St
City, State, ZIP+4® Stockton, CA 95206

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instruction

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*

Sacramento CA 95812

Certified Mail Fee $4.70

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $0.00
- ☐ Return Receipt (electronic) $0.00
- ☐ Certified Mail Restricted Delivery $0.00
- ☐ Adult Signature Required $0.00
- ☐ Adult Signature Restricted Delivery $0.00

Postage $9.85

Total Postage and Fees $14.25

Postmark Here
MAR 9 2024
US POSTAL SERVICE
03/09/2024

Sent To ERIC OPPENHEIMER EXOT DIR
Street and Apt. No., or PO Box No. PO BOX 100
City, State, ZIP+4® SACRAMENTO CA 95812-0100

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*

Washington DC 20460

Certified Mail Fee $4.70

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $0.00
- ☐ Return Receipt (electronic) $0.00
- ☐ Certified Mail Restricted Delivery $0.00
- ☐ Adult Signature Required $0.00
- ☐ Adult Signature Restricted Delivery $0.00

Postage $9.85

Total Postage and Fees $14.25

Postmark Here
MAR 9 2024
US POSTAL SERVICE
03/09/2024

Sent To MICHAEL REGAN / US EPA
Street and Apt. No., or PO Box No. 1200 PENNSYLVANIA AVE N.W.
City, State, ZIP+4® WASHINGTON D.C. 20460

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instruction